Michelle ADAMS and Chris Williams, Petitioners,

v.

**FARMERS INSURANCE GROUP,**
Respondent.

No. 98SC42.

Supreme Court of Colorado,
En Banc.

June 28, 1999.

Rehearing Denied Aug. 9, 1999.*

* Justice SCOTT does not participate.

The Leventhal Law Firm, P.C., Bruce J. Kaye, Beth Krulewitch, Denver, Colorado, Buchanan, Jurdem & Zulauf, P.C., Karen M. Zulauf, Denver, Colorado, Attorneys for Petitioners.

Patterson & Nuss, P.C., Franklin D. Patterson, Englewood, Colorado, Attorney for Respondent.

McDermott & Hansen, William J. Hansen, Denver, Colorado, Attorney for Amicus Committee of the Colorado Trial Lawyers Association.

Seaman and Giometti, P.C., Thomas J. Seaman, Englewood, Colorado, Attorney for Amicus Committee of the Colorado Defense Lawyers Association.

Justice RICE delivered the Opinion of the Court.

The petitioners, Michelle Adams and Chris Williams, seek review of a court of appeals opinion denying them statutory attorney fees following an action in which they were awarded personal injury protection (PIP) benefits under the Colorado Auto Accident Reparations Act, sections 10–4–701 to 10–4–726, 3 C.R.S. (1998) (No–Fault Act or Act). Specifically, the petitioners argue that the court of appeals erred in holding that a trial court may not grant attorney fees to a successful party absent a predicate factual finding that the PIP benefits were "overdue." Petitioners further emphasize the fact that the merits of the underlying PIP benefits claim were not appealed in the instant case. The petitioners argue that the court of appeals' holding not only disregards the plain language of the attorney fees provision of the Act which gives the trial court discretion to grant fees to a "successful" party, but also controverts the beneficent legislative purpose of the Act which favors liberal construction of the Act in favor of insureds. Given our agreement with the petitioners' arguments, we reverse the holding of the court of ap-

peals and remand to that court with directions to reinstate the trial court's judgment of attorney fees.

## I.

In April 1992, the petitioners, who were insured under a policy with the Farmers Insurance Group (respondent), were injured in an automobile accident. The respondent failed to pay a number of medical and rehabilitation bills submitted by the petitioners. On April 6, 1994, the petitioners filed suit against the respondent, asserting *inter alia* a claim for statutory PIP benefits pursuant to the No–Fault Act.[1] The petitioners also requested attorney fees pursuant to section 10–4–708(1.7)(c), 3 C.R.S. (1998), of the Act.

As the trial court later noted in its attorney fees order, the discovery phase of this case was particularly contentious. Notably, the petitioners' insurance policy was among the first policies offered by the respondent which allowed for the processing of claims for medical and rehabilitation treatment by a managed care arrangement. *See* § 10–4–706(2)(a), 3 C.R.S. (1997). Farmers utilized a Preferred Provider Organization (PPO) and hired Sloans Lake Managed Care (Sloans Lake) to administer its PPO arrangement. Significant administrative difficulties marked the initial stages of the respondent's PPO relationship with Sloans Lake. As a result, the petitioners' claims were processed by four of the respondent's employees and seven Sloans Lake employees. Despite these difficulties, the respondent refused to admit responsibility for the actions of Sloans Lake in processing the petitioners' PIP claims. As the trial court noted, this refusal increased the attorney fees involved in this action because it forced the petitioners to move for a continuance, undertake extensive discovery of the seven Sloans Lake employees involved with the petitioners' files, and file a motion for summary judgment on a novel legal issue: the responsibility of the insurer for the actions of the managed care providers in the denial of PIP benefits.[2]

At trial, the petitioners claimed medical bills totaling $58,120.54; however, the jury only awarded them $22,000. This award represented thirty-eight percent of the total PIP benefits sought. Over the respondent's objection, the petitioners requested that the jury answer a series of special interrogatories on the verdict form. The first four interrogatories asked the jury to assess the total amount of the petitioners' medical, rehabilitation, and occupational retraining bills that were "reasonable and necessary."[3] However, these interrogatories did not address whether the bills were timely paid by the respondent. Instead, the timeliness of the respondent's payment was addressed in two identical special interrogatories that the

---

1. The petitioners brought four additional claims for relief, including: bad faith breach of insurance contract, breach of contract, outrageous conduct, and willful and wanton conduct. However, the jury denied all claims except those brought under the No–Fault Act.

2. At the conclusion of the attorney fees hearing, the trial judge found that its award of attorney fees was further supported by the fact that the respondent endorsed 65 expert witnesses and 38 lay witnesses, which necessitated substantial discovery by the petitioners.

3. The interrogatories on the verdict form, and the jury's answers were as follows:
   1. What is the total amount of medical bills and rehabilitation bills, submitted by Michelle Adams, if any, which you determine are reasonable and necessary and related to treatment received for injuries in the automobile accident of April 23, 1992? [Answer:] $5,000.00.
   2. What is the total amount of medical bills and rehabilitation bills, submitted by Chris Williams, if any, which you determine are reasonable and necessary and related to treatment received for injuries in the automobile accident of April 23, 1992? [Answer:] $5,000.00.
   3. What is the total amount of bills for occupational retraining, submitted by Michelle Adams, if any, which you determine is reasonable and appropriate for Michelle Adams and will substantially contribute to rehabilitation, and which is reasonable in relation to its probable rehabilitative effects? [Answer:] $5,000.00.
   4. What is the total amount of bills for occupational retraining, submitted by Chris Williams, if any, which you determine is reasonable and appropriate for Chris Williams and will substantially contribute to rehabilitation, and which is reasonable in relation to its probable rehabilitative effects? [Answer:] $7,000.00.
   These four sums add up to $22,000, the total amount of PIP benefits awarded to the petitioners.

petitioners prepared and submitted to the jury, to wit:

> Did [the respondent] fail to pay medical bills, rehabilitation bills, occupational re-training bills, or lost wages claimed by [the petitioners] *within 30 days of receiving reasonable proof of the fact and amount of the expense* (except [the respondent] may accumulate claims for periods not exceeding one month, and benefits are not over-due if paid within fifteen days after the period of accumulation)?

(Emphasis added.) The jury answered "No" to both of these interrogatories.

Following the jury's $22,000 verdict in fa-vor of the petitioners on their statutory PIP benefits claim, the petitioners filed a motion for attorney fees pursuant to section 10–4–708(1.7), 3 C.R.S. (1998). While the respon-dent initially opposed the petitioners' motion on the basis that it claimed an unreasonable amount of fees given the fact that the peti-tioners had only met with *partial* success at trial, the respondent subsequently filed a supplemental motion alleging that any award of attorney fees would contradict the man-date of the court of appeals' recent decision in *Bunting v. RTD*, 919 P.2d 924 (Colo.App. 1996). In this motion, the respondent ar-gued that *Bunting* stood for the proposition that a trial court *may not* grant attorney fees unless the factfinder has first determined that PIP benefits were "overdue." In con-trast, the petitioners argued that *Bunting* gave trial courts broad discretion to award attorney fees. After a lengthy hearing, the trial court agreed with the petitioners [4] and awarded them $99,106.38 in fees, which rep-resented thirty-eight percent of the fees billed during the trial and 100 percent of the post-trial fees. In explaining its award, the trial court stated:

4. Specifically, the trial court distinguished the instant case from *Bunting v. RTD*, 919 P.2d 924 (Colo.App.1996), in its order awarding attorney fees, to wit:

> [This] was not the situation where there wasn't reasonable information or proof of the fact until trial. This case had been going on for a long time. There was a lot of information that was given to the [respondent] as to the [peti-tioners'] needs. [The respondent] had all of

This was a messy case. I'm not blaming the attorneys in the case for that – it was quite obvious that that is how this case was delivered to the attorneys from all of the Defendants. The number of people that were involved in this case, the documents that were involved in this case and tracing the people with the documents took an extensive amount of time. And for all the attorneys in this case to take that material that was in disarray ... it was obvious that it was a very difficult case to organize, and it took a lot of work and a lot of time.

On appeal, the respondent argued that the petitioners were not entitled to attorney fees because, although the jury found that the petitioners had proven that $22,000 in vari-ous medical bills were "reasonable and neces-sary," it simultaneously found that the PIP benefits were not "overdue." Despite these arguably inconsistent factual findings, howev-er, the respondent did *not* appeal the jury's award of $22,000 in PIP benefits. Rather, the respondent only challenged the validity of the trial court's attorney fees award, argu-ing that an "overdue" finding was a prerequi-site for an attorney fees award under the Act.

Relying heavily on the *Bunting* case, the court of appeals reversed the trial court's order granting attorney fees.[5] This appeal followed.

## II.

The petitioners argue that the court of appeals erred in concluding that, regardless of the jury's verdict, attorney fees awards pursuant to section 10–4–708(1.7)(c) are con-tingent upon a factual finding that PIP bene-fits were "overdue" pursuant to section 10–4–708(1). Specifically, the petitioners contend that, under the factual circumstances of this case, the court of appeals disregarded the

the information well in advance of trial. So, it's not the same fact situation here.

5. Furthermore, we note that the respondent's appeal to the court of appeals was limited to the issue of whether attorney fees were available to these petitioners as a matter of law. Notably, the respondent did not appeal the reasonableness of the trial court's $99,106.38 attorney fees award. Therefore, we need not consider the reasonable-ness of this award herein.

plain language and the purpose of the Act when it denied attorney fees, despite the petitioners' success in the proceedings on the merits below.

■ When construing statutory provisions, we seek to effectuate the intent of the General Assembly. In order to discern such intent, we first must look to the statutory language itself, giving words and phrases their commonly accepted and understood meaning. *See Allstate Ins. Co. v. Smith,* 902 P.2d 1386, 1387 (Colo.1995). Moreover, we must choose a construction that advances the purpose of the particular legislative scheme. *See Farmers Group, Inc. v. Williams,* 805 P.2d 419, 422 (Colo.1991). As the court of appeals failed to follow either of these governing standards of statutory interpretation, we reverse its denial of attorney fees and reinstate the trial court's findings regarding same.

## A.

The Act only requires insurers to pay medical expenses for a variety of treatments that are reasonable, necessary, and accident-related. *See* § 10–4–706(1)(b), 3 C.R.S. (1998). While the petitioners recognize that the payment of PIP benefits must have been "overdue" before an insured may bring a cognizable claim under the Act, they argue that the plain language of the attorney fees provision only requires a plaintiff to have been "successful" in the proceedings below in order to be eligible to recover attorney fees. Therefore, they contend that courts may not inquire as to whether the jury's award was premised on inconsistent verdicts before awarding attorney fees, absent an appeal of the underlying substantive claim. We agree.

■ In the absence of a statute, court rule, or private contract to the contrary, attorney fees are not recoverable by a prevailing party in either a contract or a tort action.

*See Bernhard v. Farmers Ins. Exch.,* 915 P.2d 1285, 1287 (Colo.1996). However, section 10–4–708(1.7) of the Act expressly provides for the availability of attorney fees.

■ Our effort to construe the attorney fees provision of the Act is guided by familiar principles of statutory construction. *See PDM Molding, Inc. v. Stanberg,* 898 P.2d 542, 545 (Colo.1995). Therefore, we must begin with an examination of the plain language of the attorney fees provision itself. *See id.; see also Brooke v. Restaurant Servs., Inc.,* 906 P.2d 66, 70 (Colo.1995). Where the language of a statute is plain and the meaning is clear, we need not resort to interpretive rules of statutory construction, but must apply the statute as written. *See Martin v. Montezuma–Cortez Sch. Dist. RE–1,* 841 P.2d 237, 246 (Colo.1992).

The plain language of section 10–4–708(1.7)(c) sets forth several factors that a trial court must consider in determining a party's eligibility for and the amount of attorney fees awards:

> In determining the amount of attorney fees, if any, to be awarded to the insured the . . . court *shall consider* the following:
>
> (I) *The award of attorney fees to the insured shall be in direct proportion to the degree by which the insured was successful in the proceeding. The determination of the degree of the insured's success shall be based upon a comparison of the amount of benefits set forth in the notice of amount of benefits claimed*[6] *and the amount of benefits recovered in the proceeding. The percentage resulting from their comparison shall be the degree by which the insured was successful.*
>
> . . . .
>
> (III) In no event shall the arbitrator or court enter an award of attorney fees

**6.** Section 10–4–708(1.7)(a) provides that a party seeking attorney fees under the Act must file a notice of the amount of benefits claimed, to wit:
At least twenty days prior to the commencement of the proceeding the party claiming the benefits shall set forth the amount claimed and in controversy in a separate document entitled "Note to insurer of amount claimed," which shall include no more than those amounts the insured claims are *denied or not timely paid by the insurer. The notice shall also specify the amount, if any, claimed for attorney fees.*
(Emphasis added.) It is undisputed that the petitioners complied with this requirement in a timely fashion.

which is in excess of actual reasonable attorney fees.

*Id.* (emphasis added).

Notably, in reversing the trial court's award of attorney fees, the court of appeals cited only a portion of the very first sentence of section 10–4–708(1.7)(c)(I). *See Adams v. Farmers Ins. Group,* 958 P.2d 502, 504 (Colo. App.1997) (noting that "[s]ection 10–4–708(1.7)(c)(I) . . . provides that: In determining the amount of attorney fees, *if any,* to be awarded to the insured the . . . court shall consider . . . the degree by which the insured was successful in the proceeding") (emphasis in original). Instead of referring to the remaining language of section 10–4–708(1.7) which defines what it means to be "successful in the proceedings," the court of appeals skipped to a passage in section 10–4–708(1), which governs not the availability of attorney fees, but the recovery of PIP benefits generally, to wit:

> In the event that the insurer fails to pay such benefits *when due,* the person entitled to such benefits may bring an action in contract to recover the same.

*Adams,* 958 P.2d at 504 (emphasis in original). Interpreting the foregoing portions of section 10–4–708(1.7)(c)(I) and section 10–4–708(1)(a) together, the court of appeals concluded that the Act provided that "an essential element of a statutory claim for PIP benefits is that the insurer failed to pay such benefits when due." *Adams,* 958 P.2d at 504. The court continued on to state that "[w]ithout this predicate act, *the statutory claim fails* and, with it, the court's authority to award fees to the insured under [section] 10–4–708(1.7)(c)." *Id.* (emphasis added). We emphasize that this passage indicates that the court of appeals *did* in fact evaluate the merits of the underlying PIP benefits claim, despite the fact that it was *not* appealed by the respondent. In doing so, the court of appeals relied on the jury's special interrogatory answer that the PIP benefits herein were not "overdue," in order to hold that the petitioners were not entitled to attorney fees under section 10–4–708(1.7). The court of appeals did not explain how it reached this statutory conclusion.[7]

■ While we agree that the court of appeals' analysis aptly summarizes the appellate inquiry in cases where both the underlying claim for PIP benefits and any award of attorney fees are appealed, we emphasize that such was not the case herein. In cases, such as this one, where the merits of the underlying PIP benefits claim are *not* appealed, courts may not reevaluate whether the requisite elements of such a claim were present. Instead, courts need only look to the legislature's plain and explicit language regarding the availability of attorney fees to "successful" parties. In essence, the court of appeals' selective quotation of the first sentence of section 10–4–708(1.7)(c)(I) allowed it to look outside the parameters of the Act's attorney fees provision in order to supply its own definition of who could be and who could not be considered to have been "successful in the proceedings." However, an examination of the *complete* text of section 10–4–708(1.7)(c)(I) demonstrates that the statutory definition of who constitutes a "successful" party in the substantive proceedings is in need of no additional clarification. As noted above, section 10–4–708(1.7)(c)(I) provides that

> The *determination of the degree of the insured's success* shall be based upon a *comparison of the amount* of benefits set forth in the notice of amount of benefits claimed *and the amount of benefits recovered in the proceeding.* The percentage resulting from their comparison shall be the degree by which the insured was successful.

*Id.* (emphasis added). The foregoing language makes it clear that a trial court need only refer to a party's monetary success in the proceedings on the underlying claim in order to see whether one was "successful in the proceedings" pursuant to section 10–4–708(1.7)(c)(I).

---

**7.** Notwithstanding the lack of support for the court of appeals' decision in the plain language of section 10–4–708(1.7), the court of appeals relied on the decision of another panel in *Bunting,* 919 P.2d at 927 (holding that a trial court

"has *discretion* to deny a successful claimant an award of attorney fees" under the Act and remanding the case to the trial court). However, insofar as *Bunting* is inconsistent with our opinion herein, we overrule it.

Additionally, while sections 10–4–708(1) and 10–4–708(1.7) bear upon the same general claim, PIP benefits, they address discrete subjects. Whereas section 10–4–708(1) pertains to the elements of the underlying substantive claim, subsection (1.7) pertains to the availability and amount of attorney fee awards. As these subsections address two discrete stages of a PIP benefits action, we need not interpret them together. *Cf. Yuma County Bd. of Equalization v. Cabot Petroleum Corp.*, 856 P.2d 844, 849–50 (Colo.1993) (holding that statutory interpretation tenet requiring harmonious construction of statutes related to the same subject matter required the court to interpret statutory definition of the "selling price" for oil and gas as the "actual amount of money received by the owner or operator for the sale of oil or gas," so as not to contradict another statutory provision requiring the actual value of property to serve as the basis for real property tax assessments); *Walgreen Co. v. Charnes*, 819 P.2d 1039, 1043 (Colo.1991).

█ In sum, absent an appeal of the PIP benefits award, the threshold requirement for entitlement to fees under the Act is whether the party *succeeded* monetarily in the proceeding below. We find that, given the jury's $22,000 verdict, the petitioners qualified as "successful" parties in the proceedings on the merits of their PIP claim under the plain and unambiguous language of section 10–4–708(1.7). Absent an appeal of the underlying substantive claim, we hold that the court of appeals' interpretation of section 10–4–708(1.7) was in error.

## B.

The petitioners further argue that the court of appeals' interpretation of section 10–4–708(1.7) is in derogation of the primary purpose of the No–Fault Act which favors

the liberal construction of its provisions in favor of insureds. We agree.

We have previously held that "[p]erhaps the best guide to [legislative] intent is the declaration of policy which frequently forms the initial part of the enactment." *Saint Luke's Hosp. v. Industrial Comm'n*, 142 Colo. 28, 32, 349 P.2d 995, 997 (1960); *see also Smith v. Myron Stratton Home*, 676 P.2d 1196, 1199 (Colo.1984) (noting that, in construing statutes, "[w]e must choose the construction that best effectuates the purposes of the legislative scheme"); *Harding v. Industrial Comm'n*, 183 Colo. 52, 59, 515 P.2d 95, 98 (1973) (noting that "forced ... or unusual interpretation should never be resorted to where the language is plain, its meaning is clear, and no absurdity is involved"). The legislature's express purpose in enacting the No–Fault Act was "to avoid inadequate compensation to victims of automobile accidents." § 10–4–702, 3 C.R.S. (1997); *see also State Farm Mut. Auto. Ins. Co. v. Peiffer*, 955 P.2d 1008, 1011 (Colo. 1998); *Allstate Ins. Co. v. Smith*, 902 P.2d at 1387; *Jensen v. American Family Mut. Ins. Co.*, 683 P.2d 1212, 1213 (Colo.App.1984). In keeping with the foregoing legislative declaration, we have repeatedly held that the Act is to be liberally construed to further its remedial and beneficent purposes. *See Regional Transp. Dist. v. Voss*, 890 P.2d 663, 669 (Colo.1995); *Travelers Indem. Co. v. Barnes*, 191 Colo. 278, 283, 552 P.2d 300, 304 (1976).

We find that the court of appeals' decision to read an unenumerated prerequisite into the attorney fees provision clearly favors the position of insurers by allowing courts to effectively reassess the factual underpinnings of a verdict in favor of insureds, without requiring the insurers to go to the expense of appealing the merits of the underlying claim.[8] As such an interpretation of section

---

8. We also note that, were attorney fees to be unavailable under the Act despite an insured's success in the proceedings below, it would effectively allow insurers to evade our application of the standard of review for inconsistent verdicts. *See Hock v. New York Life Ins. Co.*, 876 P.2d 1242, 1259 (Colo.1994) (imposing a duty upon appellate courts to reconcile the jury's inconsistent answers to a special verdict and the verdict itself in favor of the latter if it is "at all possible"

based on the evidence and the instructions given); *Alzado v. Blinder, Robinson & Co.*, 752 P.2d 544, 554 (Colo.1988).

Application of this standard of review likely would have favored the petitioners in the instant case. As noted above, the jury's verdict recognized the petitioner's PIP benefits claim. Additionally, both the evidence and the instructions favored the jury's verdict herein. First, even the

10–4–708(1.7) is more consistent with the legislative declaration which requires the liberal construction of the Act in favor of insureds, we hold the court of appeals interpretation to have been in error.

### III.

We hold that the court of appeals erred in interpreting section 10–4–708(1.7) as allowing a reassessment of the factual underpinnings of a jury's verdict, absent an appeal of the underlying substantive claim or allegations of inconsistent verdicts. Accordingly, we reverse the court of appeals' denial of attorney fees herein, and remand to that court with directions to reinstate the trial court's judgment awarding attorney fees.

Justice MARTINEZ, specially concurring:

I agree that appellate courts may not re-evaluate the elements of an underlying PIP award when only the grant of attorney fees associated therewith has been appealed. However, I do not agree with the majority that the court of appeals misinterpreted the statutory framework. I write separately to make clear that I would decide this case on the basis of its appellate posture, and not on questions of statutory construction or legislative intent.

An action for recovery of PIP benefits is not cognizable absent an insurer's actual failure to pay such benefits when they are due. Indeed, section 10–4–708(1), 3 C.R.S. (1998), requires such nonpayment before an action may be brought, providing that *"[i]n the event that the insurer fails to pay such benefits when due,* the person entitled to such benefits may bring an action in contract to recover the same."* (Emphasis added.)

It is only once an action has resulted in an award of past due benefits that consideration of an award of attorney fees pursuant to section 10–4–708(1.7)(c) becomes necessary.

The formula for the appropriate award of fees is based on the degree to which the claimant was "successful" in the underlying proceeding. *See id.*

The actual entitlement to an award of such fees, however, rests on something more substantial. Attorney fees do not become the proper subject of an award under section 10–4–708(1.7)(c) of the statute unless and until the claimant obtains PIP benefits pursuant to section 10–4–708(1). As such, any attorney fees award in this context must logically be understood to rest, albeit indirectly, upon the insurers' failure to timely pay benefits – the factual and legal predicate for the underlying action. *See* § 10–4–708(1), 3 C.R.S. (1998).

As the majority explains, the jury award of $22,000 in PIP benefits pursuant to interrogatories one through four is potentially inconsistent with the jurors' findings, in other interrogatories, that the amounts were not past due. On appeal, however, Farmers raised the inconsistency only as it would affect the propriety of the resulting attorney fees. In my view, it is this incomplete appeal that requires reinstatement of the fee award entered by the trial court.

The court of appeals found that the basis for a successful PIP recovery action is that the insurer failed to pay benefits when due. *See Adams v. Farmers Ins. Group,* 958 P.2d 502, 504 (Colo.App.1997). The court of appeals went on to recognize that "[w]ithout this predicate act [the failure to pay benefits when due], the statutory claim fails and, with it, the court's authority to award fees to the insured under § 10–4–708(1.7)(c)." *Id.* As noted above, I agree in principle with this statement of the statutory framework. As a result, I do not endorse the majority's conclusion today that the court of appeals' erred in its interpretation of the statute. Inasmuch as proof that an insurer has failed to timely pay benefits is a prerequisite for the

court of appeals found that "there was evidence indicating that certain bills may not have been timely paid." *Adams,* 958 P.2d at 505. Second, Instruction No. 11 advised the jury of the need for them to find that the respondent "did not pay the claims for [PIP] benefits submitted by the [petitioners] within 30 days of receiving reasonable proof" of such expenses, in order for the

petitioners to prevail on their statutory claim. We also note, without deciding, that it is possible to reconcile the jury's monetary verdict with its finding that the benefits were not "overdue" if one assumes that the respondent erroneously *denied* petitioners' claims for the $22,000 in PIP benefits. *See* § 10–4–708(1) & -(1.7)(a).

underlying action, it is also a prerequisite for the associated attorney fees.

In my view, the problem is not the construction of the statute, but the failure of the court of appeals to recognize that the appellate posture of this case prevented the proper analysis. I disagree, for example, with the court of appeals' suggestion that the jury "squarely decided" that PIP benefits were not overdue. *Adams*, 958 P.2d at 504. One could only reach this conclusion by ignoring the fact that the jury did award $22,000 worth of PIP benefits. In defense of its decision to regard the answers to the "timely payment" interrogatories as the controlling aspect of the verdict, the court of appeals observed that the *insureds* had not raised the potential inconsistency on appeal. *See id.* at 505. However, the insureds were the successful plaintiffs in the trial court. They are not required to level arguments against their own judgment. It was Farmers – as the party against whom the PIP award was obtained – who had the responsibility of raising any potential infirmity in the underlying PIP judgment on appeal. Because it did not, I would hold that Farmers cannot now collaterally argue that a core finding necessary to sustain that judgment was lacking as it indirectly applied to the attorney fees award.

In sum, I agree that the court of appeals may not vacate the award of attorney fees in this case. However, unlike the majority, I do not believe that the court of appeals misinterpreted the statutory framework. I am persuaded instead by the fact that the appellate courts have been prevented from properly evaluating the validity of the PIP award (and thus, the validity of the associated attorney fees) by the incomplete appeal brought by Farmers from the trial court. Accordingly, I join in the judgment of the majority but I do not join in its opinion inasmuch as it conflicts with my observations here.

Justice KOURLIS joins in this special concurrence.