**Robert GOODWIN, individually, and Brinda Goodwin, as next friend for Mariah Jones and Blaze Goodwin, Plaintiffs–Appellants,**

v.

**HOMELAND CENTRAL INSURANCE COMPANY, f/k/a Hawkeye Security Insurance Company, an Iowa corporation, Defendant–Appellee.**

No. 05CA2038.

Colorado Court of Appeals,
Div. I.

June 28, 2007.

As Modified on Denial of Rehearing
Oct. 25, 2007.

The Carey Law Firm, Robert B. Carey, Leif Garrison, Colorado Springs, Colorado; Walter H. Sargent, P.C., Walter H. Sargent, Colorado Springs, Colorado, for Plaintiffs–Appellants.

Bayer & Carey, P.C., Gary L. Palumbo, Peter M. Spiessbach, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge J. JONES.

This case concerns an automobile accident in which plaintiffs, members of the Goodwin family, suffered severe injuries. The Goodwins sued Homeland Central Insurance Company, on behalf of themselves and all others similarly situated, claiming Homeland had failed to offer them extended personal injury protection (PIP) benefits.

The trial court granted class certification as to the Goodwins' reformation claim, and granted summary judgment in favor of the Goodwins and the class on that claim, reforming their insurance contracts with Homeland to provide extended PIP benefits. The trial court denied class certification as to the Goodwins' remaining claims, and entered summary judgment in Homeland's favor on those claims, except for the Goodwins' claim for bad faith breach of insurance contract. At trial, the trial court granted Homeland's motion for a directed verdict on that claim, and subsequently awarded Homeland its costs.

The Goodwins appeal the trial court's dismissal of their breach of contract and insurance bad faith claims, certain of its evidentiary rulings, its refusal to allow further discovery concerning class members, its refusal to award them attorney fees and costs, and its award of costs to Homeland.

We conclude that the Goodwins' appeal is untimely except as to the attorney fees and costs issues, and accordingly dismiss the appeal as to all other issues. We affirm the trial court's order concerning attorney fees

and costs, and we remand the case to the trial court for correction of the form of the judgment.

## I. Background

On May 21, 1998, plaintiff Robert Goodwin drove a truck in which his wife, Brinda, and their three children, Blaze, Mariah, and Grannit, were passengers. The truck was owned by Chris Reynolds, a relative, who had given Robert permission to use it. The truck collided with another vehicle. All the Goodwins were injured.

At the time of the accident, Reynolds held an automobile insurance policy issued by Homeland. Reynolds's policy provided PIP benefits at the minimum levels required by § 10–4–706 of the former Colorado Auto Accident Reparations Act (the No–Fault Act), Colo. Sess. Laws 1973, ch. 94, § 13–25–6 at 335 (formerly codified as amended at § 10–4–706; No–Fault Act repealed effective July 1, 2003, Colo. Sess. Laws 2002, ch. 189, § 10–4–726 at 649), including up to $100,000 per individual for combined medical and rehabilitation benefits. It is undisputed that the Goodwins are covered under Reynolds's policy.

Robert, Blaze, and Mariah incurred expenses above the $100,000 limit. Homeland formally denied coverage for all amounts that exceeded that limit.

The Goodwins (except Grannit) subsequently filed this action against Homeland, asserting that it had failed to offer them extended PIP benefits as required by former § 10–4–710(2), Colo. Sess. Laws 1973, ch. 94, § 13–25–10 at 339 (formerly codified as amended at § 10–4–710). (Brinda brought claims only in a representative capacity on behalf of Blaze and Mariah.) The Goodwins asserted claims for reformation of Reynolds's insurance policy to include extended PIP benefits, breach of contract, breach of the duty of good faith and fair dealing, statutory willful and wanton breach of contract, bad faith breach of contract, and deceptive trade practices. The Goodwins also requested class certification pursuant to C.R.C.P. 23 as to these claims on behalf of similarly situated persons covered by Homeland policies.

On February 2, 2001, the trial court granted the Goodwins' motion for partial summary judgment on the reformation claim, ruling that Homeland's "practice of selling automobile insurance to Colorado residents without offering extended benefits was in violation of the No–Fault Law, as a matter of law." The order noted that the policy issued to Reynolds "was identical or substantially similar to those issued all [Homeland] Colorado policyholders," and that "[f]or all such persons' policies, [Homeland] did not offer extended [PIP] benefits." The court ordered that "the above-described [Homeland] policies shall be, and hereby are, reformed to reflect the extended [PIP] benefits . . . ."

On December 18, 2001, the trial court granted the Goodwins' motion for class certification. As a result, Homeland was required to identify potential class members. On November 6, 2002, the court issued an order compelling Homeland to produce additional information and documents regarding unidentified class members. On September 21, 2003, the trial court approved a notice of class action for all class members informing them of the nature of the litigation, and their right to participate in it or to opt out of the class.

On October 30, 2003, the trial court entered an order decertifying the class on the ground the class was not so numerous as to make joinder of individual plaintiffs impractical. On December 30, 2003, the trial court entered an order vacating its earlier order decertifying the class. It recertified the class and expanded the class definition. That order defined the class as follows:

All persons who were either a named insured, resident relative of the named insured, passenger or pedestrian (as defined by C.R.S. § 10–4–707) under [Homeland] policies that were issued without an offer of extended PIP benefits coverage that included non-resident relative passengers and pedestrians having been made and who were injured in an automobile accident [on] or after July 1, 1992, to the present but excluding all [Homeland] executives, their legal counsel and their immediate family members.

This definition of the class controlled throughout the trial court proceedings.

The court sent a new notice of class action to all class members on April 8, 2004, informing them that they did not need to take any action to be included in the class, but if they wished to be excluded from the class they needed to mail such a request no later than May 12, 2004. On April 30, 2004, the court decertified the class as to all claims except the reformation claim, concluding the other claims of the putative class members did not share common questions of fact.

Homeland paid the Goodwins extended PIP benefits in February 2003. The trial court ordered Homeland to pay the Goodwins and certain class members eighteen percent interest per annum on extended PIP benefits from the date of the reformation of the insurance contracts, which was February 2, 2001.

Homeland then moved for summary judgment on the Goodwins' individual breach of contract claims, contending that because all the PIP benefits under the reformed policy had been paid to the Goodwins, there could be no breach. The trial court agreed and granted Homeland's motion. In the course of the litigation, the trial court also granted Homeland's other motions for partial summary judgment pertaining to certain remedies sought by the Goodwins and their claim for deceptive trade practices. This left only the Goodwins' bad faith breach of insurance contract claim unadjudicated.

In January 2004, Homeland made an offer of settlement to Robert, Blaze, and Mariah of $50,000 each. The Goodwins refused that offer.

In July 2004, the Goodwins tried their bad faith claim to a jury. The trial court precluded them from offering lay or expert testimony regarding insurance industry standards of conduct, and then granted Homeland's motion for a directed verdict on the ground that the Goodwins had not presented any evidence of insurance industry standards of conduct. The court's order granting Homeland's motion for directed verdict stated that judgment was "entered in this matter in favor of [Homeland] and against [the Goodwins] on all remaining causes of action."

Following the trial, Homeland filed a motion for an award of costs pursuant to §§ 13–16–122 and 13–17–202(1), C.R.S.2006. The Goodwins objected, contending that the motion was premature because discovery concerning the identities of class members was not yet complete. On December 9, 2004, the trial court granted Homeland's motion for costs under § 13–17–202(1), but left the amount to be determined later upon Homeland's filing of a bill of costs, and granted the Goodwins' motion to compel Homeland to provide certain discovery relating to the identities of additional class members. In ruling, the court observed that "no claims remain unadjudicated" and "the case is, in fact, over."

Homeland filed a revised motion for costs and bill of costs, requesting $13,190.11. The Goodwins filed a motion for over $560,000 in attorney fees and almost $30,000 in costs, pursuant to former § 10–4–708, Colo. Sess. Laws 1973, ch. 94, § 13–25–8 at 338 (formerly codified as amended at § 10–4–708), which permitted an award of attorney fees to an insured who succeeded monetarily on a claim that the insurer did not timely pay PIP benefits.

The Goodwins also sought additional discovery concerning class members, but on May 11, 2005, the court denied their motion to compel further discovery, finding that Homeland "has made a reasonable effort under the circumstances to disclose the names of all persons it has records of who are or might be included as members of the designated class and that further efforts to identify additional class members would be fruitless." The court further stated that the "discovery process should terminate," and that "[n]o claims survive in this case against [Homeland]."

Twenty-two days later, on June 1, 2005, the Goodwins filed a motion asking the court to reconsider its order of May 11, 2005, denying additional discovery, or, alternatively, for the entry of a "final judgment" indicating amounts class members had recovered from Homeland as a result of the reformation of their insurance contracts. On September 14, 2005, the court denied their motion for recon-

sideration, or, alternatively, entry of final judgment. As to the latter, the court determined that judgment had already been entered on all claims, the last of which occurred on July 14, 2004, and therefore "there remains no matter upon which further judgment need be entered."

On August 9, 2005, the trial court denied the Goodwins' motion for attorney fees and costs. The court found that although the Goodwins had prevailed on one claim (the reformation claim), they were not the prevailing party in the case. The court denied the Goodwins' request for attorney fees pursuant to former § 10–4–708 because all claims for nonpayment of benefits had been resolved in Homeland's favor. The court also awarded Homeland $13,190.11 in costs.

The Goodwins filed their notice of appeal on September 23, 2005.

## II. Discussion

### A. Timeliness of Appeal

Homeland contends this appeal is untimely, except as to the trial court's August 9, 2005 order regarding attorney fees and costs. We agree.

■ The timely filing of a notice of appeal in accordance with C.A.R. 4(a) is mandatory and jurisdictional. *Estep v. People,* 753 P.2d 1241, 1246 (Colo.1988); *SMLL, L.L.C. v. Daly,* 128 P.3d 266, 269–70 (Colo.App.2005).

■ C.A.R. 4(a) requires that a notice of appeal in a civil case be filed "within forty-five days of the date of the entry of the judgment, decree, or order from which the party appeals." The forty-five-days begin to run when a "final judgment" is entered. "As a general rule a judgment is final and therefore appealable if it disposes of the entire litigation on its merits, leaving nothing for the court to do but execute on the judgment." *Kempter v. Hurd,* 713 P.2d 1274, 1277 (Colo. 1986); *accord Grand County Custom Homebuilding, LLC v. Bell,* 148 P.3d 398, 400 (Colo.App.2006). We apply these principles in class action cases in the same manner as in other types of litigation, subject to the applicability of the rules of civil procedure governing appeals of certain orders in class

action cases, none of which applies in this case. *See Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467–70, 98 S.Ct. 2454, 2457–59, 57 L.Ed.2d 351 (1978).

■ As the trial court noted in a number of orders, its July 14, 2004 order granting Homeland's motion for a directed verdict on the Goodwins' claim for bad faith breach of insurance contract disposed of the last remaining claim against Homeland. Though the Goodwins and the class members had prevailed on the reformation claim, all relief on that claim had been awarded long before July 14, 2004: the court entered summary judgment on that claim in the Goodwins' favor on February 2, 2001. Indeed, in the trial management order plaintiffs expressly acknowledged that "[t]he court has previously granted the class summary judgment on the issues [sic] of reformation."

The Goodwins repeatedly acknowledged the previous judgment in favor of the class in other filings with the court. For instance, the "Initial Judgment" submitted by plaintiffs for the court's approval on January 21, 2003 stated: "Based upon the Court's entry of Summary Judgment reforming the policies of insurance covering the Class" judgment would be entered as noted. On August 9, 2004, plaintiffs filed a response to Homeland's motion for costs and motion for stay in which they stated several times that all plaintiffs, including "the class," had prevailed on the reformation claim "by a summary judgment order entered on February 2, 2001." The only issues pertaining to the class identified by plaintiffs after final certification of the class were identification of class members and notice thereto: plaintiffs proceeded on the express understanding that the court had entered summary judgment on the reformation claim in favor of the class in 2001. We further observe that plaintiffs repeatedly requested the district court to approve payments, including interest from February 2, 2001, to class members based on class members' reformed policies.

Thus, as of December 30, 2003, the class was conclusively defined, and as of July 14, 2004, nothing remained for the court to do but execute on the judgment. Hence, the notice of appeal was due by August 28, 2004.

The Goodwins, however, did not file their notice of appeal until September 23, 2005, more than one year too late.

■ We recognize that the Goodwins filed a motion for attorney fees and costs, which was not ruled on until August 9, 2005. The pendency of such a motion, however, does not preclude a judgment on the merits from becoming final or toll the running of the forty-five-day period for filing a notice of appeal, at least where, as here, attorney fees are sought pursuant to a statutory fee-shifting provision rather than as damages. *See Ferrell v. Glenwood Brokers, Ltd.*, 848 P.2d 936, 941 (Colo.1993); *Baldwin v. Bright Mortgage Co.*, 757 P.2d 1072, 1073–74 (Colo. 1988); *Kennedy v. King Soopers Inc.*, 148 P.3d 385, 387 (Colo.App.2006).

We further conclude the Goodwins' motion to reconsider or, in the alternative, for entry of final judgment filed June 1, 2005 did not toll the running of the forty-five-day period.

■ The timely filing of a motion pursuant to C.R.C.P. 59 tolls the time for filing a notice of appeal. *See Jensen v. Runta*, 80 P.3d 906, 907–08 (Colo.App.2003); *United Bank of Boulder, N.A. v. Buchanan*, 836 P.2d 473, 475 (Colo.App.1992). The Goodwins' motion, however, was not filed pursuant to C.R.C.P. 59. It did not request C.R.C.P. 59 relief, but rather sought reconsideration of an order denying additional discovery or, alternatively, the entry of final judgment. *Cf. SMLL, supra*, 128 P.3d at 270 (motion for decree that previous order of dismissal was a final judgment did not extend the time for filing a notice of appeal).

■ Nor was the motion timely under C.R.C.P. 59. A motion under that rule must be filed within fifteen days "of entry of judgment." C.R.C.P. 59(a). As noted, judgment was entered July 14, 2004, more than one year earlier. Even if we assume the court's order of May 11, 2005, terminating all discovery as to the class was the final judgment, the motion was not timely under C.R.C.P. 59 because it was filed twenty-two days later. An untimely C.R.C.P. 59 motion does not toll the time for filing a notice of appeal. *Stone v. People*, 895 P.2d 1154, 1155–56 (Colo.App. 1995).

The Goodwins concede the July 14, 2004 judgment was a final judgment as to their individual claims, but contend it was not a final judgment as to the class because matters pertaining to the class claim for reformation remained unresolved. We are not persuaded.

On the date of trial, the only unadjudicated claim (bad faith breach of contract) was asserted by the Goodwins individually. The reformation claim, the only claim as to which the class was certified, had already been resolved. Though discovery continued to identify class members, that discovery was in aid of execution of the judgment that had already been entered in favor of the class on the reformation claim. In any event, the trial court's order of May 11, 2005 terminated all discovery as to the class, and the Goodwins did not file a notice of appeal within forty-five days of that order.

■ The Goodwins also contend the trial court has not yet entered a final judgment as to the class in accordance with C.R.C.P. 23(c)(3). Their argument is unavailing.

C.R.C.P. 23(c)(3) provides:

The judgment in an action maintained as a class action under subsections (b)(1) or (b)(2), whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class. The judgment in an action maintained as a class action under subsection (b)(3), whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in subsection (c)(2) was directed, and who have not requested exclusion, and whom the court finds to be members of the class.

Here, the trial court apparently certified the class pursuant to C.R.C.P. 23(b)(2) and (b)(3), and possibly pursuant to C.R.C.P. 23(b)(1)(A).

We are not aware of any Colorado appellate decision construing C.R.C.P. 23(c)(3) in this context, but because it is identical to Fed.R.Civ.P. 23(c)(3), we may look to authorities construing the federal rule for guidance. *Goebel v. Colorado Dep't of Institutions*, 764 P.2d 785, 794 n. 12 (Colo.1988); *Medina v.*

*Conseco Annuity Assurance Co.*, 121 P.3d 345, 348 (Colo.App.2005).

 Subsection (c)(3) of Fed.R.Civ.P. 23 was adopted in 1966 to resolve a controversy concerning who would be bound by judgments in various types of class action suits. *See* Fed.R.Civ.P. 23 1966 Advisory Committee Note; 7AA Charles Alan Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1789 (3d ed.2005). The rule resolved that controversy "by indicating that uniform treatment be accorded to judgments in all class actions." *Federal Practice and Procedure, supra,* § 1789, at 550. In short, those identified in the manners called for in the rule ordinarily will be bound by the judgment. Therefore, C.R.C.P. 23(c)(3) is merely an aid for identifying persons bound by a class action judgment; it does not impose a requirement that, if unsatisfied, precludes the entry of a final judgment.

 Indeed, "[t]he failure to specify the members of the class at the time the judgment is entered is not a fatal error ... and the case can be remanded to remedy the defect." *Federal Practice and Procedure, supra,* § 1789, at 551; *see also Vaughter v. Eastern Air Lines, Inc.,* 817 F.2d 685, 689 (11th Cir.1987) (holding such an oversight can be corrected under Fed.R.Civ.P. 60(a)); *Harmsen v. Smith,* 693 F.2d 932, 942 (9th Cir.1982); *Newman v. Prior,* 518 F.2d 97, 101 (4th Cir.1975), *overruled on other grounds by Newcome v. Esrey,* 862 F.2d 1099 (4th Cir.1988); *Young v. Katz,* 447 F.2d 431, 435 (5th Cir.1971). No case applying the rule has held that the failure strictly to comply therewith precludes appellate review of the judgment. A failure of such compliance is merely a clerical defect correctable under C.R.C.P. 60(a). It follows that any such defect does not toll the time for filing a notice of appeal. *See* C.A.R. 4(a).

In sum, we conclude the Goodwins' notice of appeal is timely only as to the trial court's August 9, 2005 order concerning attorney fees and costs. We therefore dismiss the appeal as to all other matters, and remand the case to the trial court to correct the form of the judgment to comply with C.R.C.P. 23(c)(3).

**B. Attorney Fees and Costs**

The Goodwins contend that the trial court erred in denying their request for attorney fees and costs pursuant to former § 10–4–708(1.7), and in awarding costs to Homeland pursuant to § 13–17–202. We disagree.

**1. The Goodwins' Request for Attorney Fees Under Former § 10–4–708**

Former § 10–4–708(1.7) provided that a party who filed suit to recover unpaid PIP benefits may be entitled to an award of attorney fees. In determining the amount of attorney fees, if any, that should be awarded, the statute directed the court to consider the degree of the party's success in the action:

> The award of attorney fees to the insured shall be in direct proportion to the degree by which the insured was successful in the proceeding. The determination of the degree of the insured's success shall be based upon a comparison of the amount of benefits set forth in the notice of amount of benefits claimed and the amount of benefits recovered in the proceeding. The percentage resulting from this comparison shall be the degree by which the insured was successful.

Section 10–4–708(1.7)(c)(I).

 Here, the trial court found, with record support, that the Goodwins failed to establish a prerequisite to recover attorney fees in this context—that Homeland failed to pay benefits when due. The trial court did not reform the insurance contracts until February 2, 2001. Therefore, no extended benefits were due prior to that date, at the earliest. *See Clark v. State Farm Mut. Auto. Ins. Co.,* 170 Fed.Appx. 554, 556–58 (10th Cir. 2006) (unpublished order and judgment) (applying § 10–4–708).

We do not agree with the Goodwins' assertion that *Adams v. Farmers Ins. Group,* 983 P.2d 797 (Colo. 1999), holds that untimely payment of benefits to an insured is not a prerequisite to a claim for attorney fees under § 10–4–708(1.7). We agree with the court in *Clark, supra,* a case which involved facts virtually identical to those here, that *Adams* is "relevant to a different set of

facts"—namely, where an insured has obtained a monetary recovery on a claim for benefits not paid when due and the insurer does not appeal the judgment on the merits. *Clark, supra,* 170 Fed.Appx. at 557–58, 2006 WL 620858. Further, in *Adams,* the court stated that the analysis employed by the court of appeals in that case—that failure to pay benefits when due is required for an award under § 10–4–718(1.7), *see Adams v. Farmers Ins. Group,* 958 P.2d 502, 504 (Colo. App.1997)—was correct "where both the underlying claim for PIP benefits and any award of attorney fees are appealed...." *Adams, supra,* 983 P.2d at 802.

■ The Goodwins nonetheless contend that Homeland's payments were untimely because they were not paid until two years after their insurance contract was reformed. We disagree.

The trial court found, with record support, that once the contract was reformed the claims were paid in a timely manner. Section 10–4–708(1) required the insurer to pay benefits within thirty days of receiving "reasonable proof of the fact and amount of expenses incurred during that period." Nothing in the record shows that the Goodwins submitted such proof until January 21, 2003. Homeland paid the Goodwins' claims on February 13, 2003, within the thirty-day period.

### 2. Homeland's Request for Costs Under § 13–17–202(1)

■ Section 13–17–202(1)(a)(II), C.R.S. 2006, provides:

> If the defendant serves an offer of settlement in writing at any time more than fourteen days before the commencement of the trial that is rejected by the plaintiff, and the plaintiff does not recover a final judgment in excess of the amount offered, then the defendant shall be awarded actual costs accruing after the offer of settlement to be paid by the plaintiff.

Homeland made settlement offers to Robert, Blaze, and Mariah of $50,000 each (inclusive of interest and awardable costs) more than fourteen days before trial pursuant to § 13–17–202(1)(a)(II). Because the Goodwins did not recover "a final judgment in excess of" Homeland's settlement offers, Homeland was entitled to an award of its reasonable costs. *See Bennett v. Hickman,* 992 P.2d 670, 673 (Colo.App.1999); *Cedar Lane Investments v. St. Paul Fire & Marine Ins. Co.,* 883 P.2d 600, 603–04 (Colo.App. 1994).

### III. Conclusion

The appeal is dismissed as to all issues and orders except the issues of attorney fees and costs determined by the trial court's order of August 9, 2005. That order is affirmed. The case is remanded to the trial court to enter a form of judgment in compliance with C.R.C.P. 23(c)(3).

Judge MÁRQUEZ and Judge TAUBMAN concur.