1
 2025 CO 35 In re the Parental Responsibilities Concerning Children: K.M.S., M.D.S., and R.E.S., and Concerning Petitioners Suzanne Nicolas and August Nicolas, and Jayne Mecque Sullivan and Daniel Francis Sullivan, Respondents No. 24SC788
Supreme Court of Colorado, En Banc
June 9, 2025
 
          
 Attorneys for Petitioners: Connelly Law, LLC Sean Connelly,
 Hogan Omidi, PC, Hollie A. Hinton
 
 
          
 Attorneys for Respondents: Grob & Eirich, LLC Timothy J.
 Eirich.
 
 
          
 JUSTICE BOATRIGHT delivered the Opinion of the Court, in
 which JUSTICE HOOD, JUSTICE HART, and JUSTICE SAMOUR joined.
 
 2
 
          
 OPINION
 
 
          
 BOATRIGHT, JUSTICE.
 
 
          ¶1
 This appeal considers grandparent visitation rights for three
 young children whose biological parents, Brandon and Amanda
 Sullivan, are deceased. After the children's biological
 mother and father died, Suzanne and August Nicolas ("the
 Nicolases")- Amanda's parents - adopted them. After
 the adoption was finalized, Jayne Mecque and Daniel Francis
 Sullivan ("the Sullivans")- Brandon's parents -
 moved for, and were granted, grandparent visitation pursuant
 to section 19-1-117, C.R.S. (2021).[1] The Nicolases later moved to
 vacate the visitation order, arguing that the Sullivans
 lacked standing to seek visitation. The domestic relations
 court found that the Sullivans did have standing and denied
 the motion to vacate the visitation order. A division of the
 court of appeals affirmed. In re Parental
 Responsibilities Concerning K.M.S., No. 24CA253, ¶
 1 (Nov. 7, 2024). We granted certiorari to review whether the
 division erred in affirming the domestic relations
 court's order upholding the Sullivans' standing to
 seek grandparent visitation.[2]
 
 3
 
          ¶2
 We now determine that grandparent standing is limited by
 section 19-1-103(70)(a), C.R.S. (2021), to one who is
 presently the parent of a child's father or mother.
 Accordingly, following an adoption, the parents of a
 child's former mother or father are no longer
 "grandparents" under the statute. We therefore hold
 that after children are adopted, the parents of a deceased
 father or mother lack standing to seek grandparent
 visitation. Because the Nicolases were the children's
 parents when the Sullivans filed their petition for
 visitation, the Sullivans were no longer legal grandparents;
 hence, the Sullivans lacked standing to seek grandparent
 visitation. We therefore reverse the judgment of the court of
 appeals and remand the case for further proceedings
 consistent with this opinion.
 
 
          I.
 Facts and Procedural History
 
 
          ¶3
 In 2020, Brandon killed both his wife, Amanda, and himself,
 leaving behind a two-year-old child and infant twins: R.E.S.,
 K.M.S., and M.D.S. During the ensuing probate proceedings,
 the court appointed the Nicolases as the children's
 emergency, and then permanent, guardians.[3] The court also
 approved a stipulated grandparent visitation plan allowing
 the Sullivans to regularly visit the children.
 
 4
 
          ¶4
 The following year, the Nicolases adopted the three children.
 The probate court thereafter closed the proceedings and
 transferred all matters concerning the children into a
 previously stayed domestic relations case initiated by the
 Sullivans. The Sullivans then filed a motion for grandparent
 visitation in that case under section 19-1-117.[4] The domestic
 relations court issued a visitation order awarding
 grandparent visitation to the Sullivans.
 
 
          ¶5
 A year and a half later, the Nicolases filed a C.R.C.P.
 60(b)(3) motion for relief from judgment, seeking to vacate
 the visitation order as void. The Nicolases argued that,
 following their adoption of the children, the Sullivans were
 no longer the children's grandparents, meaning they
 lacked standing to seek grandparent visitation. In doing so,
 the Nicolases relied on the present-tense language in section
 19-1-103(70)(a), which defines "[grandparent" as
 "a person who is the parent of a child's
 father or mother, who is related to the child by blood, in
 whole or by half, adoption, or marriage." (Emphasis
 added.) The Nicolases asserted that, because they (rather
 than Brandon and Amanda) were the children's parents when
 the Sullivans filed their petition for visitation, the
 Sullivans were no longer the children's legal
 grandparents. The domestic relations court denied the motion,
 
 5
 
 reasoning that a "literal interpretation of the term
 'parent' would be inconsistent with the intent of the
 statute and the interpretation of grandparent visitation in
 [prior] appellate cases."
 
 
          ¶6
 The Nicolases appealed, and a division of the court of
 appeals affirmed. K.M.S., ¶ 1. In upholding the
 Sullivans' standing to seek grandparent visitation, the
 division rejected the Nicolases' interpretation of
 section 19-1-103(70)(a) as inconsistent with the overarching
 statutory scheme for grandparent visitation and one that
 would render other statutes superfluous-namely section
 19-1-117(1)(b), which allows grandparents to seek visitation
 when custody has been allocated to a non-parent,
 except when the child has been adopted. Id.
 at ¶¶ 15, 19. Moreover, the division concluded that
 section 19-1-103(70)(a) "contained no language
 temporally restricting the definition of grandparent to the
 parents of the child's father or mother as of the
 date of the petition [for grandparent visitation]."
 Id. at ¶ 21. ¶7 We granted certiorari.
 
 
          II.
 Analysis
 
 
          ¶8
 We must first acknowledge the tragic nature of the case
 before us. Both families have suffered irreparable harm, and
 it is clear from the record that both the Nicolases and the
 Sullivans care deeply for the children and wish to be
 involved in their lives. As the domestic relations court
 noted in its order for grandparent visitation: "[T]he
 underlying tragedy that resulted in this proceeding,
 
 6
 
 the guardianships, and the adoptions, was the simultaneous
 death of the children's parents." We recognize that
 this loss, and the uniquely difficult circumstances that
 surround it, present profound challenges for those involved,
 for which there is almost assuredly no satisfactory legal
 outcome. Despite this, we must rule for one party and against
 the other. We granted certiorari to review the court of
 appeals' decision upholding the Sullivans' right to
 grandparent visitation, and we now turn to the matter at
 hand.
 
 
          ¶9
 We begin by discussing the applicable standard of review. We
 then turn to the relevant provisions of the Children's
 Code, particularly the grandparent visitation statute.
 Construing the statutory language to effectuate its plain and
 ordinary meaning, we hold that after children are adopted,
 the parents of a deceased father or mother lack standing to
 seek grandparent visitation.
 
 
          A.
 Standard of Review and Rules of Statutory Construction
 
 
          ¶10
 "Whether a party has standing is a question of law that
 we review de novo." Aurora Pub. Schs. v. A.S.,
 2023 CO 39, ¶ 25, 531 P.3d 1036, 1044. Standing pertains
 to "a litigant's right to raise a legal argument or
 claim," Reeves-Toney v. Sch. Dist. No. 1 in City
 & Cnty. of Denver, 2019 CO 40, ¶ 21, 442 P.3d
 81, 85-86, and is "a threshold issue that must be
 satisfied in order to decide a case on the merits,"
 Ainscough v. Owens, 90 P.3d 851, 855 (Colo. 2004).
 
 7
 
          ¶11
 "When a plaintiff brings a claim under a statute, the
 standing inquiry turns on whether the statutory provision
 'can properly be understood as granting persons in the
 plaintiff's position a right to judicial
 relief.'" Vickery v. Evelyn V. Trumble Living
 Tr., 277 P.3d 864, 868 (Colo.App. 2011) (quoting
 Pomerantz v. Microsoft Corp., 50 P.3d 929, 932
 (Colo.App. 2002)). Addressing this inquiry concerns
 "matters of statutory interpretation that we review de
 novo." Masterpiece Cakeshop, Inc. v. Scardina,
 2024 CO 67, ¶ 22, 556 P.3d 1238, 1245.
 
 
          ¶12
 In construing the relevant statutes, our primary task
 "is to ascertain and give effect to the intent of the
 General Assembly." In re Marriage of Ikeler,
 161 P.3d 663, 666 (Colo. 2007). In doing so, we consider the
 statute as a whole, giving "consistent, harmonious, and
 sensible effect to all its parts." Id. at
 666-67. We begin by looking to the language of the statute,
 giving words and phrases their plain and ordinary meaning.
 People v. Dist. Ct., 713 P.2d 918, 921 (Colo. 1986).
 When possible, "we must give effect to every word of the
 statute." Charlton v. Kimata, 815 P.2d 946, 949
 (Colo. 1991). We defer to the legislature's choice of
 language, and "we will not add words to a statute or
 subtract words from it." Dep't of Revenue v.
 Agilent Techs., Inc., 2019 CO 41, ¶ 16, 441 P.3d
 1012, 1016. If the language of the statute is clear and
 unambiguous, we "need not resort to other rules of
 statutory construction." Id. We apply the
 statute as written. Id.
 
 8
 
          B.
 Parents of a Deceased Father or Mother Lack Standing to Seek
 Grandparent Visitation Post-Adoption
 
 
          ¶13
 Section 19-1-117(1) allows a grandparent to seek visitation
 rights "when there is or has been a child custody case
 or a case concerning the allocation of parental
 responsibilities relating to that child." The statute
 delineates three circumstances that may give rise to motions
 for grandparent visitation: (1) marriage dissolution
 proceedings, (2) the allocation of custody or parental rights
 to a non-parent, or (3) the death of a child's parent.
 § 19-1-117(1)(a)-(c). Specifically, the statute provides
 that a grandparent may seek visitation rights in the
 following situations:
 
 
 (a)That the marriage of the child's parents has been
 declared invalid or has been dissolved by a court or that a
 court has entered a decree of legal separation with regard to
 such marriage;
 
 
 (b)That legal custody of or parental responsibilities with
 respect to the child have been given or allocated to a party
 other than the child's parent or that the child has been
 placed outside of and does not reside in the home of the
 child's parent, excluding any child who has been placed
 for adoption or whose adoption has been legally finalized; or
 
 
 (c)That the child's parent, who is the child of the
 grandparent . . . has died.
 
 
 Id.
 
 
          ¶14
 For purposes of the visitation statute,
 "[g]randparent" is defined as "a person who
 is the parent of a child's father or mother, who
 is related to the child by blood, in whole or by half,
 adoption, or marriage." § 19-1-103(70)(a) (emphasis
 
 9
 
 added). The statute further provides that for purposes of
 visitation, "'grandparent' does not include the
 parent of a child's legal father or mother whose parental
 rights have been terminated." § 19-1-103(70)(b).
 The question here is whether the Sullivans, following the
 Nicolases' adoption of the children, still qualify as the
 children's grandparents.
 
 
          ¶15
 The Sullivans first argue that, because the exclusion of
 "grandparent" in section 19-1-103(70)(b) is
 specific to the termination of parental rights, they remained
 "grandparents" for purposes of section
 19-1-117(1)(c) (allowing grandparents to seek visitation when
 the child's parent has died). They contend that the
 Nicolases' present-tense reading is overbroad because it
 would mean that the Sullivans lost their status as
 grandparents immediately upon Brandon's death-an absurd
 result.
 
 
          ¶16
 The Sullivans also note that, although section 19-1-117(1)(b)
 contains an adoption exclusion, subsection (c) contains no
 such limitation. § 19-1-117(1)(b) (grandparents cannot
 seek visitation rights for a child "who has been placed
 for adoption or whose adoption has been legally
 finalized"); § 19-1-117(1)(c) (providing for the
 death of a child's parent as a basis upon which to seek
 visitation). Therefore, the Sullivans maintain that the
 legislature did not intend for any exclusion to apply when
 one or both parents have died.
 
 10
 
          ¶17
 In addressing these arguments, we begin with the principle
 that, under this state's law, "a child is limited to
 having just two legal parents." People in Int. of
 K.L.W., 2021 COA 56, ¶ 21, 492 P.3d 392, 397. And
 Colorado law is clear that "[a]fter the entry of a final
 decree of adoption, the person adopted is, for all intents
 and purposes, the child of the petitioner."
 §19-5-211(1), C.R.S. (2024). Concordantly, upon
 adoption, the child's former parents are "divested
 of all legal rights and obligations with respect to the
 child."[5] § 19-5-211(2). Thus, adoption by two
 new parents necessarily terminates any prior parental
 relationships. See In Int. of Baby A, 2015 CO 72,
 ¶ 17, 363 P.3d 193, 200 (recognizing that, where a
 biological father sought to void his termination of parental
 rights after an adoption had been finalized, "we must
 make a determination adverse to one party" -implying all
 three could not be parents); see also D.P.H. v.
 J.L.B., 260 P.3d 320, 323 (Colo. 2011) (noting that
 "a proceeding for stepparent adoption necessarily
 includes the termination of the parental rights of the
 non-custodial parent").
 
 
          ¶18
 The Sullivans assert that their son continued to be a parent
 to the children-even after his death and their
 adoption by the Nicolases. But this argument goes too far. To
 be sure, the death of a parent does not instantly nullify
 
 11
 
 grandparentage. Yet, an adoption does just that.
 Specifically, "[p]arent" is defined as
 "either a natural parent of a child . . .
 or a parent by adoption." §
 19-1-103(105)(a) (emphases added). This disjunctive phrasing
 suggests that once adoptive parties become parents, decedents
 are no longer recognized as legal parents. See Armintrout
 v. People, 864 P.2d 576, 581 (Colo. 1993) ("[W]hen
 the word 'or' is used in a statute, it is presumed to
 be used in the disjunctive sense, unless legislative intent
 is clearly to the contrary.").
 
 
          ¶19
 Turning to section 19-1-103(70)(a), the statutory definition
 of "[g]randparent" is written in the present tense:
 "a person who is the parent of a child's
 father or mother." (Emphasis added.) Again, "[t]he
 fundamental rule of construction is to ascertain the intent
 of the legislature, and to give effect to every word
 of an enactment." Johnston v. City Council, 493
 P.2d 651, 654 (Colo. 1972) (emphasis added). Yet the
 Sullivans' proposed construction essentially alters the
 statutory definition to read that a grandparent "is
 or was" or "has been" the
 parent of a child's father or mother. We decline to adopt
 such an interpretation. See Dep't of Revenue,
 ¶ 16, 441 P.3d at 1016 ("[W]e will not add words to
 a statute . . . ."). Therefore, we determine that the
 statute's plain language imposes a temporal limitation,
 restricting "grandparent" to one who is a
 grandparent at the time the petition for visitation is filed.
 
 12
 
          ¶20
 The Sullivans assert that this interpretation conflicts with
 section 19-1-103(70)(b), which excludes from the definition
 of "grandparent" the parent of a "legal father
 or mother whose parental rights have been terminated."
 We disagree. Just because the Sullivans are not
 excluded by subsection (70)(b) does not mean they
 are included in subsection (70)(a). Rather,
 subsection (70)(b)'s exclusion merely clarifies the
 limits of the general definition, making it evident that for
 visitation purposes, subsection (70)(a) "does not
 include" the parent of one "whose parental rights
 have been terminated," § 19-1-103(70)(b).
 
 
          ¶21
 Nor does this interpretation negate section
 19-1-117(1)(b)'s adoption exclusion, which specifically
 precludes a motion for grandparent visitation when a child
 "has been placed for adoption or whose adoption has been
 legally finalized" in cases allocating custody or
 parental responsibilities to a non-parent. The court of
 appeals division determined that construing section
 19-1-103(70)(a) as preventing grandparents from seeking
 visitation following the adoption of a child by two new
 parents would render section 19-1-117(1)(b)'s adoption
 exclusion "largely superfluous." K.M.S.,
 ¶ 19. But the adoption exclusion applies to additional
 circumstances-such as when a child is placed for
 adoption, yet the parents of the child's mother and
 father remain grandparents under section 19-1-103(70)(a).
 Moreover, as both parties acknowledged, the legislature may
 take a "belt-and-suspenders" approach to
 "avoid unintended gaps." Pugin v. Garland,
 599 U.S. 600, 609, 610 n.3 (2023).
 
 13
 
 Rather than being superfluous, section 19-1-117(1)(b)'s
 adoption exclusion simply extinguishes any potential
 ambiguity regarding whether the right to seek visitation
 survives a finalized adoption. Thus, while perhaps
 repetitious in certain cases, the adoption exclusion is not
 rendered meaningless by our interpretation of
 "grandparent" as one who is presently the parent of
 a child's mother or father.
 
 
          ¶22
 Our interpretation accords with "the bedrock principle
 that the right to parent one's children is a fundamental
 liberty interest." People in Int. of J.G., 2016
 CO 39, ¶ 20, 370 P.3d 1151, 1158; see also Troxel v.
 Granville, 530 U.S. 57, 72 (2000) (upholding a
 mother's fundamental right to make decisions about her
 children in the context of grandparent visitation).
 Consistent with this right, the decisions of parents receive
 primary consideration as to the care, custody, and control of
 their children. See Troxel, 530 U.S. at 65-66;
 see also Prince v. Massachusetts, 321 U.S. 158, 166
 (1944) ("It is cardinal with us that the custody, care
 and nurture of the child reside first in the parents.").
 Notably, as stated by the Supreme Court in Troxel,
 the decision whether "an intergenerational relationship
 [between grandparents and their grandchildren] would be
 beneficial in any specific case is for the parent to make in
 the first instance." 530 U.S. at 70. And, as we have
 recognized, "adoptive parents have the same right as
 natural parents in controlling the upbringing of their
 child." In re Adoption of C.A., 137 P.3d 318,
 326 (Colo. 2006).
 
 14
 
          ¶23
 We therefore find that standing to seek grandparent
 visitation is limited to one who is the present parent of a
 child's father or mother.[6] Accordingly, we hold that after
 children are adopted, the parents of a deceased father or
 mother lack standing to seek grandparent visitation. To hold
 otherwise would defy the statutory premise that a
 "person adopted is, for all intents and purposes, the
 child of the [new parents]." § 19-5-211(1).
 
 
          C. The
 Sullivans Lacked Standing Under the Grandparent Visitation
 Statute
 
 
          ¶24
 Immediately after the deaths of the children's biological
 parents, both the Nicolases and the Sullivans remained the
 children's legal grandparents. However, the Nicolases
 then adopted the children, at which point the Nicolases
 became the children's parents. We again
 emphasize that the children's adoption was the legally
 dispositive event in this case, rather than the death of
 their biological
 
 15
 
 parents. Accordingly, when the Sullivans thereafter
 petitioned for grandparent visitation under section 19-1-117,
 they were not the "parent[s] of [the children's]
 father or mother," meaning they were no longer
 grandparents under section 19-1-103(70)(a).[7] Thus, the
 Sullivans lacked standing to seek grandparent visitation
 under section 19-1-117(1).[8]
 
 
          III.
 Conclusion
 
 
          ¶25
 For these reasons, we reverse the judgment of the court of
 appeals and remand the case for further proceedings
 consistent with this opinion.
 
 
          
 JUSTICE BERKENKOTTER, joined by CHIEF JUSTICE MÁRQUEZ,
 and JUSTICE GABRIEL, dissented.
 
 16
 
          
 JUSTICE BERKENKOTTER, joined by CHIEF JUSTICE MÁRQUEZ,
 and JUSTICE GABRIEL, dissenting.
 
 
          ¶26
 When the General Assembly passed the Grandparent Visitation
 Statute, § 19-1-117(1), C.R.S. (2021), it created three
 distinct paths for grandparents to request a court order
 granting them reasonable visitation rights with their
 grandchildren. One of these paths grants grandparents
 standing to seek visitation rights in certain domestic
 relations cases. Another does so in certain dependency and
 neglect cases, subject to what is known as the "adoption
 exclusion." The third path grants grandparents standing
 to seek visitation if their child (the grandchild's
 parent) has died.
 
 
          ¶27
 Notwithstanding the plain language creating these three
 independent bases for grandparent standing, the majority
 looks to the definition of grandparent in section
 19-1-103(70)(a), C.R.S. (2021), and concludes that the
 Grandparent Visitation Statute doesn't actually say what
 it says. A grandparent, in the majority's view, is
 limited to a person who "is presently the
 parent of a child's father or mother." Maj. op.
 ¶ 2. To illustrate, this means that if twelve-year-old
 Patrick is adopted by a great-aunt and great-uncle after
 losing both of his parents in a tragic car accident, his
 grandparents are no longer his grandparents. Instead, using
 the words of the majority, upon his adoption, his
 grandparents became the parents of Patrick's
 "former mother or father." Id.
 This time-bending notion of
 
 17
 
 parenthood and grandparenthood was not contemplated by the
 legislature, particularly in light of the explicit path it
 carved out in section 19-1-117(1)(c) to allow a grandparent
 to seek grandparent visitation upon the death of their child.
 It also is at odds with the General Assembly's expansive
 definition in section 19-1-103(70) of what it means to be a
 grandparent.
 
 
          ¶28
 I write separately because the majority's interpretation
 (1) disregards the plain language of the Grandparent
 Visitation Statute and (2) misconstrues the definitions of
 "grandparent" in sections 19-1-103(70)(a) and (b).
 For these reasons, which I further detail below, I
 respectfully dissent.
 
 
          I.
 Analysis
 
 
          ¶29
 I begin with the Grandparent Visitation Statute. The statute
 "allows a grandparent to seek 'reasonable grandchild
 visitation rights' when there is a child custody case or
 a case concerning the allocation of parental
 responsibilities." In re Adoption of C.A., 137
 P.3d 318, 323 (Colo. 2006) (quoting § 19-1-117(1),
 C.R.S. (2005)). Section 19-1-117(1) provides three bases upon
 which grandparents may petition for visitation:
 
 
 (a)That the marriage of the child's parents has been
 declared invalid or has been dissolved by a court or that a
 court has entered a decree of legal separation with regard to
 such marriage;
 
 
 (b)That legal custody of or parental responsibilities with
 respect to the child have been given or allocated to a party
 other than the child's parent or that the child has been
 placed outside of and does not reside
 
 18
 
 in the home of the child's parent, excluding any child
 who has been placed for adoption or whose adoption has been
 legally finalized; or
 
 
 (c) That the child's parent, who is the child of the
 grandparent or grandchild of the great-grandparent, has died.
 
 
 (Emphasis added.)
 
 
          ¶30
 The plain language of the statute demonstrates that the
 General Assembly intended to treat each of these
 circumstances differently. Its use of the disjunctive
 "or" at the end of section 19-1-117(1)(b), in
 particular, confirms that it intended each circumstance to
 constitute an independent basis for grandparent visitation
 requests. "[W]hen the word 'or' is used in a
 statute, it is presumed to be used in the disjunctive sense,
 unless legislative intent is clearly to the contrary."
 Armintrout v. People, 864 P.2d 576, 581 (Colo.
 1993).
 
 
          ¶31
 Thus, a grandparent whose child is a respondent in a
 dependency and neglect proceeding may request reasonable
 visitation under section 19-1-117(1)(b) if their grandchild
 is placed outside of the respondent's home. But, under
 the adoption exclusion, if the respondent's parental
 rights are terminated and the grandchild is placed for
 adoption or an adoption has been finalized, the grandparent
 no longer has standing to seek visitation. By contrast, a
 grandparent whose child has died may request reasonable
 visitation with their deceased child's minor offspring
 under section 19-1-117(1)(c) at any time. This is because
 section 19-1-117(1)(c) does not include an adoption or any
 other kind of exclusion.
 
 19
 
 If the General Assembly intended to treat both of these
 circumstances the same, it would not have included a specific
 provision that grants standing to grandparents who have lost
 a child, § 19-1-117(1)(c), and a separate, far narrower
 provision that grants grandparent standing in certain
 dependency and neglect proceedings, § 19-1-117(1)(b).
 This difference is a forceful indication that the legislature
 intended to treat the familial relationships legally severed
 via termination and adoption differently than those touched
 by the death of a child's parent. See In re
 Petition of R.A., 66 P.3d 146, 149-50 (Colo.App.
 2002) (holding that a parent's death results in a lapse,
 and not a termination, of parental rights).
 
 
          A.
 The Majority's
 Reasoning Does
 Not Square
 with Section 19-1-117(1)
 
 
          ¶32
 Nonetheless, the majority concludes that "after children
 are adopted, the parents of a deceased father or mother lack
 standing to seek grandparent visitation." Maj. op.
 ¶ 23. In my view, this interpretation, with its
 universal bar following adoption, is undermined by section
 19-1-117(1) for three reasons. First, as noted, the
 majority's interpretation disregards the use of the
 disjunctive "or" in the statute. Second, the
 majority's interpretation doesn't honor the General
 Assembly's decision to explicitly carve out the death of
 a child's parent as an independent basis to seek
 grandparent visitation because it only permits visitation, if
 both parents have died, until the child is
 adopted-essentially merging sections 19-1-117(1)(b) and
 (1)(c). And third, if the General Assembly
 
 20
 
 intended to limit a grandparent's standing in this
 fashion, it could have included an adoption exclusion in
 section 19-1-117(1)(c). Yet, it did not do so. "Under
 the rule of interpretation expressio unius exclusio
 alterius, the inclusion of certain items implies the
 exclusion of others." Beeghly v. Mack, 20 P.3d
 610, 613 (Colo. 2001). Here, the legislature specifically
 limited grandparent standing in section 19-1-117(1)(b) in a
 way that it did not in section 19-1-117(1)(c). As I've
 explained, this choice has substantive meaning. It also shows
 that the legislature knows how to craft this type of
 exclusion when it wants to do so.
 
 
          B.
 The Majority's
 Reasoning Is
 Also at
 Odds with Section
 19-1-103(70)
 
 
          ¶33
 The language in section 19-1-103(70) also undermines the
 majority's reasoning. The differences in the text in
 section 19-1-103(70)(a) and section 19-1-103(70)(b), in
 particular, are instructive. In section 19-1-103(70)(a),
 grandparent is defined expansively as: "a person who is
 the parent of a child's father or mother, who is related
 to the child by blood, in whole or by half, adoption, or
 marriage." Section 19-1-103(70)(b), in turn, limits the
 term grandparent, explaining that it "does not include
 the parent of a child's legal father or mother
 whose parental rights have been terminated" under other
 specified Colorado laws. (Emphasis added.) Notably, the
 language in section 19-1-103(70)(b), which seems to neatly
 align with section 19-1-117(1)(b), explicitly excludes the
 parent of a child's legal father or mother whose parental
 
 21
 
 rights have been terminated. It does not exclude a
 grandparent whose child has died. See R.A., 66 P.3d
 at 149-50.
 
 
          ¶34
 The majority reads the language in section 19-1-103(70)(a) as
 a sort of temporal limit on who can be a grandparent. In its
 view, only "a person who is presently the
 parent of a child's father or mother" is a
 grandparent. Maj. op. ¶ 2. It claims that the use of the
 present tense unambiguously restricts a grandparent to one
 who is a grandparent at the time the petition is
 filed. Id. But the statute does not actually
 say this. The statute contains no language temporally
 restricting the definition of grandparent to the parent of
 the child's father or mother as of the date of the
 petition.
 
 
          ¶35
 Moreover, a biological parent is a parent in life
 and in death. That is, when a child loses a parent, whether
 the child is three or fifty-three, their parent remains their
 parent forever. The biological relationship does not change
 if a young child loses both parents and is later adopted.
 That is not to take anything away from the adoptive parent,
 who is also a parent. It's simply that the relationship
 between the parent who died and the child who survived
 transcends time in a way our language reflects. We refer, for
 example, to our deceased family members even if they died
 decades ago as "my father" and "my
 mother," not "my former father" and
 "my former mother."
 
 22
 
          ¶36
 This commonsense understanding of the enduring nature of this
 relationship does not, however, run afoul of the principle
 that a child can't have more than two legal parents at a
 time. Moreover, upon death, the deceased parent's
 parental rights lapse, but they are not terminated.
 R.A., 66 P.3d at 149-50. Thus, acknowledging the
 blood relation between a grandparent and grandchild, after
 the child's parents have died, does not create the
 possibility of the child having a third parent. Further, this
 understanding doesn't alter the broader statutory
 definition of grandparent, which as I explain next, is not
 limited to "legal" grandparents.
 
 
          ¶37
 The majority's interpretation of the word grandparent in
 section 19-1-103(70)(a) is also inconsistent with the
 term's expansive definition. The majority repeatedly
 emphasizes that that the Sullivans were no longer
 "legal" grandparents. Maj. op. ¶¶ 2, 5.
 In doing so, it distorts and narrows the definition of
 grandparent in section 19-1-103(70)(a). Consequently, the
 majority fails to recognize the expansive scope of the
 definition, which explicitly encompasses both biological
 grandparents ("related to the child by blood, in whole
 or by half") as well as persons who become related to
 the grandchild through legal proceedings ("[by]
 adoption, or marriage"). § 19-1-103(70)(a). This
 misstep-and its focus on the word "is"-distracts
 the majority from recognizing that the Sullivans are
 unquestionably grandparents under section 19-1-103(70)(a).
 
 23
 
          ¶38
 What's more, the majority's interpretation of section
 19-1-103(70)(a) is in direct conflict with section
 19-1-103(70)(b), which excludes from the definition of
 "grandparent" those grandparents whose
 children's parental rights have been terminated. Unlike
 section 19-1-103(70)(a), the exclusion in section
 19-1-103(70)(b) explicitly includes the phrase
 "legal father or mother." §
 19-1-103(70)(b) (emphasis added). Given that the basic
 definition of "parent" includes both
 biological parents ("a natural parent of a child")
 and legal parents ("a parent by adoption"),
 see § 19-1-103(105)(a), it is clear that the
 legislature knows how to distinguish the broader definition
 of parent or grandparent from a narrower one limited to
 "legal" parents and "legal" grandparents.
 
 
          ¶39
 In my view, the majority's reading of section
 19-1-103(70)(a) runs afoul of one of our basic rules of
 statutory interpretation. We "must respect the
 legislature's choice of language," and thus "we
 may not add words to a statute or subtract words from
 it." People in Int. of B.C.B., 2025 CO 28,
 ¶ 25, P.3d . The specific inclusion of the word
 "legal" in section 19-1-103(70)(b) clearly evinces
 the General Assembly's intent to not limit section
 19-1-103(70)(a) to legal parents; indeed, had it
 intended to, it would have explicitly included the word
 "legal" just like it did in section
 19-1-103(70)(b).
 
 
          ¶40
 The majority's approach also makes the adoption exclusion
 in section 19-1-117(1)(b) largely superfluous. If a
 grandparent is automatically
 
 24
 
 disqualified from petitioning for reasonable visitation upon
 a grandchild's adoption pursuant to section
 19-1-103(70)(a), then the adoption exclusion, as found solely
 in section 19-1-117(1)(b), serves no purpose. And "we
 must avoid constructions that would render any statutory
 words or phrases superfluous or that would lead to illogical
 or absurd results." B.C.B., ¶ 24.
 
 
          ¶41
 The majority's interpretation of the word grandparent
 also renders section 19-1-103(70)(b) largely superfluous.
 Why? Because if the majority's interpretation of section
 19-1-103(70)(a) is correct, then there is no need for section
 19-1-103(70)(b) because, as soon as a grandchild is adopted
 post-termination, a grandparent would no longer be the parent
 of the adopted child's parent. That is, section
 19-1-103(70)(a) would already cover that situation. ¶42
 I note as well that the majority's pronouncement that
 adoption "instantly nullif[ies] grandparentage,"
 Maj. op. ¶ 18, is belied by the language of section
 19-1-103(70)(a). What if twelve-year-old Patrick is adopted,
 not by his great-aunt and great-uncle, but by his maternal
 aunt after his parents die in a car accident? One of his
 maternal grandparents could still-under the explicit language
 of section 19-1-103(70)(a)-seek reasonable grandparent
 visitation with the child. The grandmother could do this as
 "a person who is the parent of a child's father or
 mother [the maternal aunt], who is related to the child by
 blood." § 19-1-103(70)(a). But Patrick's
 paternal grandparents could not seek visitation.
 
 25
 
 Thus, it appears that the rule the majority announces is
 perhaps not so logical after all.
 
 
          ¶43
 Each of these many flaws in the majority's reasoning
 highlights that adoption does not instantly nullify
 grandparentage. They illustrate, instead, that the only way
 to construe subsections (70)(a) and (b) harmoniously is to
 read section 19-1-103(70)(a) as applying to all
 parents, not just the current legal parents, and to
 read section 19-1-103(70)(b) as creating an exception for
 grandparents when their child's parental rights-their
 legal rights as parents-are terminated.
 
 
          ¶44
 Thus, as I see it, the Sullivans qualify as grandparents
 because they are still the parents of the
 children's father and are still related to the
 children by blood. And under the Grandparent Visitation
 Statute, the Sullivans may seek visitation rights because,
 under section 19-1-117(1)(c), the child's parent, who
 is their child, has died. This relationship is not
 extinguished by death, and the General Assembly has not
 adopted some time-bending definition of grandparent that says
 that it does. The Sullivans are the biological
 parents of the children's father; they are related to
 K.M.S. and M.D.S. by blood, and R.E.S. by adoption; and their
 son's parental rights as to the children had not been
 terminated at the time of his death. Thus, the Sullivans have
 standing to seek reasonable visitation with their three
 grandchildren under the Grandparent Visitation Statute.
 
 26
 
          ¶45
 Finally, I note that the question of whether the Sullivans
 should be allowed to have grandparent visitation with their
 three grandchildren is not the issue before us. Rather, the
 question we address is whether the Sullivans have the legal
 right to even ask for visitation. It is ultimately up to the
 trial court, applying Troxel v. Granville, 530 U.S.
 57, 68, 70 (2000), to decide if the Sullivans should be
 granted visitation. To make this determination, the court
 must apply the traditional presumption that a fit parent will
 act in the best interest of his or her child, and thus the
 court must give "special weight" to the
 Nicholases' determination regarding what is in the
 children's best interests. Id. at 69.
 
 
          II.
 Conclusion
 
 
          ¶46
 Because section 19-1-117(1)(c) grants grandparents standing
 to seek visitation rights if their child (the
 grandchild's parent) has died, and nothing in the
 expansive definition of the term grandparent in section
 19-1-103(70)(a) changes that, I would affirm the judgment of
 the court of appeals.
 
 
 ---------
 
 
 Notes:
 
 
 [1] Section 19-1-117, along with portions
 of section 19-1-103, C.R.S. (2021), were later amended and
 recodified as section 14-10-124.4, C.R.S. (2024).
 See Ch. 243, sec. 2, § 14-10-124.4, 2023 Colo.
 Sess. Laws 1302, 1302-05. Because the statutes in effect in
 2021 control this case, we apply them in our
 analysis.
 
 
 [2] Specifically, we granted certiorari to
 review the following issue:
 
 
 Whether parents of a deceased father or mother have
 standing to seek "grandparent" visitation of
 children adopted by two new parents.
 
 
 [3] Following the death of the
 children's biological parents, the Nicolases petitioned
 for emergency guardianship in the probate cases. The
 Sullivans later filed competing requests for guardianship in
 those same cases.
 
 
 [4] While the Sullivans did submit other
 filings to the court across the relevant cases pertaining to
 their involvement with the children, they did not file a
 verified motion for grandparent visitation until
 after the Nicolases adopted the children.
 
 
 [5] There is an exception when the
 adopting parent is a stepparent who is married to the other
 natural parent. See § 19-5-211(3).
 
 
 [6] Other jurisdictions that have
 addressed post-adoption visitation have similarly denied
 standing to former grandparents where the statute at issue
 defines "grandparent" as the parent of a
 child's mother or father. See, e.g., Lindsay v.
 Walker, 356 P.3d 195, 199 (Utah Ct. App. 2015)
 (concluding that the biological grandparent was unable to
 meet the statutory definition of a "grandparent"
 after the child's adoption by new parents); see also
 Jocham v. Sutliff, 26 N.E.3d 82, 87 (Ind.Ct.App. 2015)
 (concluding that a biological grandparent had no standing to
 seek visitation with the adopted child). Courts have also
 relied on adoption statutes to hold that an "adoption
 completely abrogates the legal relationship between a child
 and his natural grandparents." Bopp v. Lino,
 885 P.2d 559, 563 (Nev. 1994); see also Sowers v.
 Tsamolias, 941 P.2d 949, 950 (Kan. 1997) (noting that an
 adopted child "has new parents and new grandparents as
 well").
 
 
 [7] The Sullivans argue that the Nicolases
 should be estopped from claiming that the Sullivans lack
 standing to seek grandparent visitation. Specifically, the
 Sullivans contend that they relied on the Nicolases'
 prior representations-i.e., that the Nicolases intended for
 the Sullivans to retain visitation rights post-adoption-such
 that it is now unjust for the Nicolases to reverse course and
 attempt to void the visitation order. But the Sullivans
 cannot rely on estoppel to revive their since-extinguished
 lack of standing, which is a jurisdictional question. Cf.
 Mesa Cnty. Valley Sch. Dist No. 51 v. Kelsey, 8 P.3d
 1200, 1206 (Colo. 2000) ("[S]ubject-matter jurisdiction
 cannot be waived or conferred by consent, estoppel, or
 laches.").
 
 
 [8] Because we find that the Sullivans are
 precluded from seeking visitation under the statutory
 definition of "grandparent," we need not decide
 whether the adoption exclusion contained in section
 19-1-117(1)(b) applies to this case.
 
 
 ---------