The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
July 31, 2025

**2025COA70**

**No. 24CA0855, *Smith v. City and County of Denver* — Government — Colorado Governmental Immunity Act — Sovereign Immunity a Bar — Interlocutory Appeal — Appeal Filed at Conclusion of Case**

In this proceeding under the Colorado Governmental Immunity Act (CGIA), a division of the court of appeals considers as a matter of first impression whether section 24-10-108, C.R.S. 2024, requires a plaintiff to immediately appeal a district court's order dismissing some of the plaintiff's claims for lack of subject matter jurisdiction when some of the plaintiff's other claims remain unresolved. The division holds that, in those circumstances, section 24-10-108 permits a plaintiff to challenge the court's order granting immunity to a public entity either in an immediate interlocutory appeal or in an appeal filed at the conclusion of the case. Because the plaintiffs here filed a timely appeal following the

final disposition of the case, the division concludes that it has jurisdiction to review the merits of the plaintiffs' challenges to the district court's order dismissing their claims against a public entity on CGIA grounds. And because the division further concludes that the court didn't err by determining that the public entity is immune from liability under the CGIA, the division affirms the court's judgment of dismissal.

COLORADO COURT OF APPEALS                                    **2025COA70**

Court of Appeals No. 24CA0855
City and County of Denver District Court No. 23CV30349
Honorable Jon J. Olafson, Judge

Ronald G. Smith and Jasper Armstrong, in his representative capacity and on behalf of Ronald G. Smith,

Plaintiffs-Appellants,

v.

City and County of Denver, a Colorado municipal corporation, and James Jenkinson,

Defendants-Appellees.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE KUHN
J. Jones and Moultrie, JJ., concur

Announced July 31, 2025

The Paul Wilkinson Law Firm LLC, Nelson Boyle, Denver, Colorado, for Plaintiffs-Appellants

Katie McLoughlin, Acting City Attorney, David Murphy, Assistant City Attorney, Denver, Colorado, for Defendants-Appellees

¶ 1 The Colorado Governmental Immunity Act (CGIA) provides that "[t]he court's decision on [a motion asserting sovereign immunity] shall be a final judgment and shall be subject to interlocutory appeal." § 24-10-108, C.R.S. 2024. In this appeal of a district court's order granting immunity to a public entity and dismissing, for lack of subject matter jurisdiction, the plaintiffs' claims affected by that ruling, we consider whether section 24-10-108 *requires* the plaintiff to immediately appeal such an order when some of the plaintiff's other claims remain unresolved.

¶ 2 We hold that when the district court grants a public entity's motion to dismiss for lack of subject matter jurisdiction under the CGIA, but claims not affected by that ruling remain unresolved, section 24-10-108 permits the plaintiff to challenge the order granting immunity either in an interlocutory appeal or in an appeal filed at the conclusion of the case. Consequently, we conclude that we have jurisdiction over the appeal that plaintiffs, Ronald G. Smith and Jasper Armstrong, in his representative capacity on behalf of Smith, filed from the district court's order dismissing their action against defendants, the City and County of Denver (the City) and James Jenkinson (jointly, the Denver Defendants), on CGIA

grounds. And because we further conclude that the court didn't err by determining that the Denver Defendants are immune from liability under the CGIA, we affirm.

## I. Background

¶ 3 We glean the following factual background from the record and the order that the district court issued after conducting an evidentiary hearing.

¶ 4 In January 2021, a Denver Fire Department firehouse received a report of a fire at an apartment building. Jenkinson, a Denver Fire Department engineer, started the truck. He then activated the truck's Opticom transmitter[1] and its lights and sirens. After confirming that his fellow firefighters were ready to respond to the emergency, Jenkinson drove toward the reported fire.

¶ 5 En route, Jenkinson drove north on Lincoln Street before turning left onto Speer Boulevard. As he approached a red light at

---

[1] The Opticom system is a traffic control system that provides a temporary right-of-way to emergency vehicles approaching a traffic light. A vehicle equipped with an Opticom transmitter sends a strobe signal to a receiver that is mounted on or near the traffic light. The receiver then generates a green light request to the traffic controller for the approaching emergency vehicle. *See Igwe v. Skaggs*, 258 F. Supp. 3d 596, 602-03 (W.D. Pa. 2017).

the intersection of Speer and Broadway, Jenkinson engaged the fire truck's exhaust brake by releasing the accelerator, hovered his foot over the brake pedal to reduce his reaction time, and slowed down to approximately twenty-two miles per hour.  Then, believing that he had cleared all six lanes of the cross traffic on Broadway that had a green light, Jenkinson "accelerate[d] as fast as [he could] to get through [the] intersection."  Simultaneously, a 2012 Honda Civic in which Smith was a passenger entered the intersection from Broadway at a speed of about forty miles per hour and hit the fire truck's front side.

¶ 6     The car "became lodged on the front of [the fire truck]" from the force of the collision.  It was pushed roughly sixty-five feet beyond the point of impact.  Two occupants in the car died.  Smith suffered severe injuries but ultimately survived the accident.

¶ 7     Smith filed a lawsuit in connection with the accident.  After amending his complaint several times, Smith asserted claims against the City, Jenkinson, and Global Traffic Technologies, LLC (GTT), the company that designed and manufactured the Opticom

3

system at the intersection.[2]  Specifically, Smith asserted claims for negligence against the City and GTT, negligence per se and negligent operation of an emergency vehicle against Jenkinson, vicarious liability against the City for Jenkinson's conduct, and product liability against GTT.

¶ 8    The Denver Defendants filed a C.R.C.P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction on the basis that they were immune from liability under the CGIA because Jenkinson was operating an emergency vehicle at the time of the accident.  *See* § 24-10-106(1)(a), C.R.S. 2024.  In his response to the motion, Smith contended that the Denver Defendants had waived sovereign immunity because Jenkinson violated section 42-4-108(2) and (3), C.R.S. 2024.  More specifically, Smith argued that Jenkinson proceeded through the red light without slowing down as was necessary for the safe operation of the fire truck.  *See* § 42-4-108(2)(b).  Smith cited various vehicle guidelines from outside entities in support of his argument that Jenkinson was

---

[2] Smith alleged that although the intersection of Speer and Broadway was equipped with an Opticom receiver, the system malfunctioned, and the traffic light didn't change from red to green as Jenkinson approached the intersection.

required, and failed, to (1) come to a complete stop before entering the intersection; (2) "[e]stablish eye contact or other assurances with each auto in the converging lanes of traffic" before passing through the red light; and (3) drive past each lane of cross traffic "as though each lane [were] its own intersection" while maintaining a speed that would have allowed Jenkinson to stop immediately.

¶ 9 In February 2024, the district court conducted an evidentiary hearing on that motion. *See Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo. 1993). In a written order issued on February 13, the court determined that Smith hadn't carried his burden of proving that Jenkinson failed to slow down as was necessary for the safe operation of the fire truck. Accordingly, the court concluded that the Denver Defendants have immunity under the CGIA and dismissed the claims against them for lack of subject matter jurisdiction.

¶ 10 On March 28, the district court granted a joint stipulation for the dismissal of the claims against GTT, the remaining defendant. Smith then filed a notice of appeal on May 14, challenging the court's decision to dismiss his complaint against the Denver Defendants.

## II. Appellate Jurisdiction

¶ 11    The Denver Defendants contend that we lack jurisdiction to consider the merits of Smith's challenges to the district court's order dismissing his claims on CGIA grounds because he failed to timely appeal that order. We disagree.

### A. Applicable Law

¶ 12    "Before reaching the merits of an appeal, we must first determine whether we have jurisdiction." *Stone Grp. Holdings LLC v. Ellison*, 2024 COA 10, ¶ 15. Indeed, because we have an independent duty to ensure that limits on our jurisdiction are observed, we may raise jurisdictional defects nostra sponte. *See Colo. Cmty. Bank v. Hoffman*, 2013 COA 146, ¶ 20; *Brookhart v. Reaman*, 2023 COA 93, ¶ 18 ("We must determine independently our jurisdiction over an appeal, nostra sponte if necessary." (quoting *Allison v. Engel*, 2017 COA 43, ¶ 22)).

¶ 13    "Appellate jurisdiction boils down to three basic concepts: subject matter jurisdiction, timeliness, and finality." *Chavez v. Chavez*, 2020 COA 70, ¶ 18. The appeal before us implicates the latter two concepts.

¶ 14    The timely filing of a notice of appeal in accordance with the Colorado Appellate Rules is a mandatory prerequisite for us to review an appeal.  *See L.H.M. Corp., TCD v. Martinez*, 2021 CO 78, ¶ 29; *see also Goodwin v. Homeland Cent. Ins. Co.*, 172 P.3d 938, 943 (Colo. App. 2007).  With exceptions not relevant here, C.A.R. 4(a)(1) provides that a notice of appeal in a civil case must be filed "within [forty-nine] days after entry of the judgment, decree, or order being appealed."  Because we generally only have jurisdiction over appeals from final judgments, *see* § 13-4-102(1), C.R.S. 2024, the deadline for filing a notice of appeal begins to run when a final judgment is entered in the case, *Goodwin*, 172 P.3d at 943.

¶ 15    A judgment is final if it ends the particular action and leaves nothing further for the court to do to completely determine the rights of the parties involved in the proceeding.  *Wilson v. Kennedy*, 2020 COA 122, ¶ 7.  But while, ordinarily, "'an entire case must be decided before any ruling in that case can be appealed[,]' . . . there are limited circumstances in which a party to a civil case may take an interlocutory appeal before an entire case is final."  *Id.* at ¶ 8 (quoting *People in Interest of R.S. v. G.S.*, 2018 CO 31, ¶ 37).  For example, C.R.C.P. 54(b) permits a court in an action involving

7

multiple claims or parties to "direct the entry of a final judgment as to one or more but fewer than all of the claims or parties" if the court expressly determines that there is no just reason for delay in entering a final judgment.

¶ 16     As relevant to this case, the CGIA provides that the court's "decision on [a motion asserting sovereign immunity] shall be a final judgment and shall be subject to interlocutory appeal." §§ 24-10-108, -118(2.5), C.R.S. 2024.  The purpose of these statutory provisions "is to provide immediate appellate review of the governmental immunity issue before a trial on the merits." *Richland Dev. Co. v. E. Cherry Creek Valley Water & Sanitation Dist.*, 899 P.2d 371, 372-73 (Colo. App. 1995).  Because a district court's immunity ruling is "appealable immediately, without more," a party need not obtain a C.R.C.P. 54(b) certification to appeal that ruling. *Id.* at 373.

## B.     Standard of Review

¶ 17     We consider de novo whether we have jurisdiction over Smith's appeal.  *See McDonald v. Zions First Nat'l Bank, N.A.*, 2015 COA 29, ¶ 33.  Likewise, we interpret statutes, including the CGIA, de novo. *Hice v. Giron*, 2024 CO 9, ¶ 10.

¶ 18     Our goal in interpreting the CGIA is to give effect to the legislature's intent. *Maphis v. City of Boulder*, 2022 CO 10, ¶ 15. To do so, we begin by considering the plain language of the statute, reading the words and phrases in context and construing them according to their plain and ordinary meanings. *Stickle v. County of Jefferson*, 2022 COA 79, ¶ 16, *aff'd*, 2024 CO 7. "We look to the entire statutory scheme to give consistent, harmonious, and sensible effect to all of its parts, and we avoid constructions that would render any words or phrases superfluous or that would lead to illogical or absurd results." *Roane v. Elizabeth Sch. Dist.*, 2024 COA 59, ¶ 24.

## C.     Smith's Appeal is Timely

¶ 19     The Denver Defendants contend that Smith's appeal is untimely because, under section 24-10-108, he was required to file his notice of appeal within forty-nine days of the district court's February 13 order dismissing his claims against them on sovereign immunity grounds. Relying on *Buckles v. State*, 952 P.2d 855 (Colo. App. 1998), the Denver Defendants argue that the CGIA order was a final judgment from which Smith's C.A.R. 4(a)(1) deadline started to run.

¶ 20    In *Buckles*, individual plaintiffs sued several public entities, alleging that they improperly constructed and used a road that ran through the plaintiffs' property. *Id.* at 855. The plaintiffs asserted claims for common law trespass, inverse condemnation, and violation of civil rights under 42 U.S.C. § 1983. *Buckles*, 952 P.2d at 855. The district court dismissed the trespass claim for lack of subject matter jurisdiction under the CGIA, a ruling that the plaintiffs didn't immediately appeal. *Id.* at 856. Instead, the plaintiffs appealed the immunity ruling only after the court dismissed their remaining claims roughly two and a half months later. *Id.* A division of this court dismissed the appeal as untimely under those circumstances. *Id.* The division observed that under the plain terms of section 24-10-108, a court's determination that a public entity was entitled to immunity constituted a final judgment "even if the order [did] not dispose of an entire claim or [was] otherwise interlocutory." *Id.* "Therefore, unlike provisions which may allow for, but do not require, an appeal from an interlocutory order, [section] 24-10-108 requires that the appeal of the dismissal of a claim as barred by the [C]GIA must be sought immediately, within the time requirements of C.A.R. 4(a), or it is barred." *Id.*

10

¶ 21    Less than a year after *Buckles* was announced, the Colorado

Supreme Court considered a similar issue in *Walton v. State*, 968

P.2d 636 (Colo. 1998). In that case, Walton filed a negligence action

against the State of Colorado and one of its public employees for

injuries that she had allegedly suffered while cleaning an art

storage room at the state university where she was a student. *Id.* at

638-39. The State responded with a motion to dismiss on the

pleadings, invoking sovereign immunity under the CGIA. *Id.* at 639.

After the trial court denied that motion, the State didn't seek

immediate appellate review. *Id.* Instead, more than two years later,

it "sought reconsideration of the trial court's order and requested an

evidentiary hearing on the jurisdictional issue of governmental

immunity." *Id.* The trial court conducted an evidentiary hearing

and then denied the motion. The State filed an appeal within the

C.A.R. 4(a)(1) deadline from the second order. *Id.* at 639-41.

Walton challenged the timeliness of the appeal, arguing that the

State couldn't seek appellate review of the immunity claim when it

had failed to file a timely "interlocutory appeal from the trial court's

initial order denying its CGIA motion to dismiss on the pleadings."

*Id.* at 639.

11

¶ 22    The supreme court rejected this argument.  It reasoned that because the State didn't have an *obligation* to immediately appeal the initial denial order, its timely "interlocutory appeal after the trial court held an evidentiary hearing" on the second motion to dismiss was sufficient to confer appellate jurisdiction.  *Id.*  The *Walton* court observed that the "General Assembly did not consider the phrases 'final judgment' and 'interlocutory' [in sections 24-10-108 and -118(2.5)] to be mutually exclusive terms."  *Id.* at 640-41.  By using the phrase "final judgment" in those statutory provisions, "the legislature intended to authorize [public entities to] tak[e] . . . CGIA interlocutory appeals and avoid the uncertainty of having to obtain trial court certification under C.R.C.P. 54(b), a discretionary matter."  *Id.* at 641.

¶ 23    But "[t]he General Assembly did not intend to mandate immediate appeal of a CGIA jurisdictional ruling against the public entity as the only means to preserve its governmental immunity claim."  *Id.*  Rather, because a public entity "has a right, not an obligation, to take an interlocutory appeal" under the statute, it may elect to forgo an immediate appeal of an adverse immunity ruling "in favor of pursuing trial or settlement on the claims, while

12

preserving the CGIA issue in the event of an appeal following final disposition of the case in the trial court." *Id.* In support of this construction of the statute, the supreme court deemed significant that "the legislature provided that the trial court's CGIA ruling [was] 'subject to interlocutory appeal' . . . , not that the right to file an interlocutory appeal must be exercised to preserve the CGIA issue in the case." *Id.* (quoting §§ 24-10-108, -118(2.5)).

¶ 24    As the Denver Defendants point out, *Walton* involved a *public entity's* appeal of an order *denying* CGIA immunity. Here, like the plaintiffs in *Buckles*, Smith challenges the district court's order *granting* such immunity even though he failed to bring that appeal within forty-nine days from the date of the order. Based on all of this, the Denver Defendants argue that the factual similarities between Smith's circumstances and those present in *Buckles* are dispositive of our analysis.

¶ 25    But after noting that the CGIA doesn't require an interlocutory appeal to preserve a later challenge to a ruling, the *Walton* court went on to say, "We disapprove of any suggestion to the contrary contained in [*Buckles*]." *Id.* This context arguably suggests that the supreme court disapproved of *Buckles* to the extent it held that a

district court's ruling on the issue of CGIA immunity was a final judgment that *had* to be challenged within the appeal deadline or be barred from later consideration. Nonetheless, *Walton* is factually distinguishable from the matter before us because *Walton* involved a public entity's appeal. So we must determine whether the rule enunciated in *Walton* applies equally to a nongovernmental plaintiff when, as here, the plaintiff appeals from an order dismissing his complaint against a public entity on the grounds that the suit is barred under the CGIA. Put differently, does section 24-10-108 permit a plaintiff like Smith to forgo an interlocutory appeal and instead challenge a CGIA order in a final appeal after the district court has resolved all of the remaining claims in the case? We answer this question of first impression in the affirmative.

¶ 26   For starters, section 24-10-108 doesn't differentiate between orders granting or denying a motion to dismiss under the CGIA. Indeed, the plain language of the statute provides that "[t]he court's *decision* on such motion shall be a final judgment and shall be subject to interlocutory appeal." § 24-10-108 (emphasis added). Similarly, *Walton* provides that an immediate appeal is authorized, but not required, in connection with an order denying sovereign

immunity.  Yet the Denver Defendants read the statute as requiring an immediate appeal for an order granting such immunity.  This interpretation would add a distinction to the statute that the legislature didn't include.  *See Kyle W. Larson Enters., Inc. v. Allstate Ins. Co.*, 2012 COA 160M, ¶ 25 (observing that if the legislature intended to include a particular statutory requirement, it would have clearly expressed its intent to do so).  It would also require us to read limiting words into the statute, which we cannot do.  *See In re Parental Responsibilities Concerning K.M.S.*, 2025 CO 35, ¶¶ 12, 19; *Larrieu v. Best Buy Stores, L.P.*, 2013 CO 38, ¶ 19. And because we're not at liberty to add to, or subtract from, the words that the legislature has chosen, *Nieto v. Clark's Mkt., Inc.*, 2021 CO 48, ¶ 12, we must avoid adopting the construction of section 24-10-108 that would violate this principle of statutory interpretation.

¶ 27 Likewise, in interpreting the statute, we must also presume that the legislature intended a just and reasonable result.  *Marcellot v. Exempla, Inc.*, 2012 COA 200, ¶ 23.  Given section 24-10-108's language, it would be unfair to construe the statute as imposing an immediate appeal obligation upon plaintiffs while public entities

merely have an option to appeal under the same circumstances. True, private parties and public entities occupy asymmetrical positions in matters involving the CGIA, given that *only* public entities may raise and waive immunity. *Walton*, 968 P.2d at 641 n.6. And given that the question of sovereign immunity implicates the district court's subject matter jurisdiction to hear a claim, *see City & Cnty. of Denver v. Dennis*, 2018 CO 37, ¶ 9, a public entity may raise that issue at any time in the proceeding, *Walton*, 968 P.2d at 640, including for the first time on appeal, *Gestner v. Gestner*, 2024 COA 55, ¶ 20 n.4. Still, as we note above, we see no basis in the text of section 24-10-108 to treat private parties differently from public entities in appeals of jurisdictional rulings in CGIA cases. Accordingly, we conclude that the effect of a CGIA immunity ruling for purposes of appeal is the same, regardless of whether the court grants or denies the motion to dismiss.

¶ 28     This interpretation is also consistent with the CGIA's purposes. One of the basic purposes of the statute is "to shield public entities and employees from being forced to trial or exposed to the other burdens of extended litigation, when the viability of the proceedings is dependent on the resolution of an essentially legal

16

question." *Bresciani v. Haragan*, 968 P.2d 153, 157 (Colo. App. 1998). When a public entity is dismissed from a suit by virtue of the court's grant of immunity, the entity is not required to participate in further proceedings unless that ruling is reversed on appeal. Thus, while it's true that a subsequent appeal could bring the public entity back into the case, the timing of the appeal itself doesn't impact how long the public entity is subject to the underlying litigation.

¶ 29 Given all of this, we hold that when a district court grants a public entity's motion to dismiss for lack of subject matter jurisdiction under the CGIA, section 24-10-108 permits a plaintiff to challenge that ruling either in an immediate interlocutory appeal or in an appeal following the final disposition of the case.

¶ 30 Here, Smith filed his notice of appeal ninety-one days after the district court's February 13 CGIA order. But his appeal is nonetheless timely because he filed it within forty-nine days of the court's March 28 order dismissing his remaining claims against GTT, the last remaining defendant. Consequently, we conclude that we have jurisdiction to review the merits of Smith's appeal.

### III. Smith's Challenges to the District Court's CGIA Order

¶ 31    Smith contends that the district court's decision to dismiss his claims against the Denver Defendants must be reversed because (1) the court applied the incorrect legal standard and (2) it consequently failed to consider certain facts in assessing whether the CGIA barred those claims.[3]  We discern no error.

### A. Applicable Law

¶ 32    Generally, the CGIA bars any action against a public entity for injuries that lie in tort or could lie in tort.  § 24-10-106(1).

---

[3] At oral argument, Smith's counsel asserted for the first time that the district court had applied the wrong legal standard in determining that Smith hadn't met his burden of proving that the Denver Defendants had waived sovereign immunity under the CGIA.  Relying on a supreme court case that was announced after briefing in this case had closed, he posited that the district court had failed to apply the "likelihood standard" in making that determination.  *See Jefferson County v. Dozier*, 2025 CO 36, ¶¶ 2, 24 ("We hold that when disputed jurisdictional facts are inextricably intertwined with the merits, a plaintiff must demonstrate a likelihood of the existence of the facts necessary to establish a waiver of CGIA immunity.").  But we generally don't review issues raised for the first time at oral argument, *see Rucker v. Fed. Nat'l Mortg. Ass'n*, 2016 COA 114, ¶ 35, and because Smith failed to argue in the district court that the likelihood standard (or indeed any other standard) applied to this case, his argument is unpreserved, *see Melat, Pressman & Higbie, L.L.P. v. Hannon L. Firm, L.L.C.*, 2012 CO 61, ¶ 18.  Therefore, we decline to consider it further.

"However, the CGIA also 'withdraws and restores this immunity through a series of immunity waivers, exceptions to those waivers, and, in some cases, conditions relating to the exceptions.'" *Bilderback v. McNabb*, 2020 COA 133, ¶ 7 (quoting *Corsentino v. Cordova*, 4 P.3d 1082, 1086 (Colo. 2000)). Accordingly, sovereign immunity is waived if, in the course of employment, a public employee injures another person while operating a motor vehicle owned or leased by the public entity. § 24-10-106(1)(a).

¶ 33 But the statute also creates an exception to the immunity waiver for authorized emergency vehicles — such as fire trucks — that are being operated in compliance with section 42-4-108(2) and (3). § 24-10-106(1)(a); *see also* § 42-1-102(6), C.R.S. 2024 (defining "authorized emergency vehicle" as including a publicly owned fire truck "operated by or for a governmental agency to protect and preserve life and property"). As relevant to this appeal, section 42-4-108(2)(b) provides that, when responding to an emergency call or a fire alarm, the driver of "an authorized emergency vehicle" may "[p]roceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation" of the vehicle. To qualify under this exception, the driver

19

must also employ visual or audible signals as required by section 42-4-213, C.R.S. 2024.  § 42-4-108(3).  Thus, if an emergency vehicle driver complies with section 42-4-108(2) and (3) while responding to an emergency, CGIA immunity is restored and is a bar to any tort action for injuries arising out of the driver's conduct. *See Corsentino*, 4 P.3d at 1086-87.

## B.     Standard of Review

¶ 34     As noted above, a C.R.C.P. 12(b)(1) motion to dismiss on the grounds of sovereign immunity under the CGIA implicates the district court's subject matter jurisdiction.  *Dennis*, ¶ 9.  The plaintiff has the burden of proving that the court has jurisdiction. *City of Longmont v. Henry-Hobbs*, 50 P.3d 906, 908 (Colo. 2002). But "this burden is relatively lenient, as the plaintiff is afforded the reasonable inferences from [his] undisputed evidence."  *Dennis*, ¶ 11.

¶ 35     The application of sovereign immunity under the CGIA presents a mixed question of fact and law.  *Maphis*, ¶ 14.  We defer to the district court's factual findings and its resolution of factual disputes upon which jurisdiction may turn unless they are clearly erroneous, finding no support in the record.  *Id.*  But we review de

novo the court's determination of questions of law, including whether the court properly interpreted a statute or applied the correct legal standard.[4] *Corsentino*, 4 P.3d at 1087-88.

¶ 36    Because the CGIA operates in derogation of the common law, we strictly construe the statute's immunity provisions and broadly construe its waiver provisions to promote "the interest of compensating victims of governmental negligence." *Heidel v. Rio Blanco Cnty. Sheriff's Off.*, 2023 COA 41, ¶ 14 (quoting *Springer v. City & Cnty. of Denver*, 13 P.3d 794, 798 (Colo. 2000)). "This means

---

[4] The parties dispute which standard of review applies to the district court's determination that Jenkinson passed through the red light "after slowing down as may be necessary for safe operation" of the fire truck, within the meaning of section 42-4-108(2)(b), C.R.S. 2024. Smith contends that de novo review applies, and the Denver Defendants contend that clear error review is appropriate. While it's true that ultimate immunity determinations are usually reviewed for clear error, the court's application of a legal standard to the historical facts of a case is a question of law. *Corsentino v. Cordova*, 4 P.3d 1082, 1087-88 (Colo. 2000) (citing *People v. Romero*, 953 P.2d 550, 555 (Colo. 1998)); *see also Friends of the Black Forest Reg'l Park, Inc. v. Bd. of Cnty. Comm'rs*, 80 P.3d 871, 882 (Colo. App. 2003) (noting that we review de novo a district court's application of facts to a statute); *Maphis v. City of Boulder*, 2022 CO 10, ¶ 16 (reviewing de novo whether the condition of a public road met the criteria for a "dangerous condition" under the immunity waiver provision in section 24-10-106(1)(d)(I), C.R.S. 2024). We thus review this determination de novo, but we would affirm under either standard.

that we also strictly construe exceptions to those waivers, which are effectively grants of immunity." *Hice*, ¶ 9.

### C. The Applicable Legal Standard Under Section 42-4-108(2)(b)

¶ 37 Smith contends that in evaluating whether Jenkinson qualified for the immunity waiver exception in section 42-4-108(2)(b), the district court was required, but failed, to consider whether Jenkinson (1) acted with due regard for the safety of other drivers within the meaning of section 42-4-108(4) and (2) satisfied an objective "reasonable emergency vehicle operator" standard.

¶ 38 Smith's first argument fails. Section 42-4-108(4) provides that "[t]he provisions of th[at] section shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of such driver's reckless disregard for the safety of others." But the supreme court held in *Fogg v. Macaluso*, 892 P.2d 271, 277 (Colo. 1995), that the duty of care referenced in that section doesn't apply to the sovereign immunity analysis under section 42-4-108(2) and (3). *Fogg* remains good law

and is dispositive of this argument. To the extent Smith asks us to depart from this precedent, we decline the invitation. It is our supreme court's prerogative alone to overrule its prior decisions. *See Nation SLP, LLC v. Bruner*, 2022 COA 76, ¶ 29 (noting that we are bound by the decisions of the supreme court).

¶ 39 Smith's second argument fares no better. He contends that section 42-4-108(2)(b) envisions an objective "reasonable emergency vehicle operator" standard, and, under that standard, the relevant inquiry is whether Jenkinson proceeded through the red light only after taking certain specific precautions recommended by various outside emergency response organizations. On appeal, Smith reiterates the argument he made in the district court — a reasonable emergency vehicle operator would have come to a complete stop before entering the intersection, established eye contact with other drivers in the intersection, and proceeded past each lane of cross traffic as if it were a separate intersection. We're not persuaded by this argument.

¶ 40 For starters, the plain language of section 42-4-108(2)(b) undercuts Smith's argument. The statute permits an operator of an emergency vehicle to pass through, as relevant here, a red light

"after slowing down as may be necessary for safe operation" of the vehicle. § 42-4-108(2)(b). In doing so, section 42-4-108(2)(b) prescribes the manner in which an emergency responder must act to be entitled to sovereign immunity under the CGIA. But it doesn't provide that the operator must take the specific steps that Smith asserts are required in his briefing. Had the General Assembly intended to impose those requirements, it would have employed language to do so. *See Hobbs v. City of Salida*, 2024 COA 25, ¶ 33 ("We presume the General Assembly acts intentionally when selecting the words used in a statute.") (*cert. granted* Sept. 30, 2024). We see no such indication in the statute.

¶ 41 Likewise, *Corsentino* doesn't command the outcome Smith urges. In that case, the supreme court held that the applicable "standard for determining whether an emergency vehicle operator was *responding to an emergency call* under section 42-4-108(2) is an objective standard from the perspective of a reasonable emergency vehicle operator." *Corsentino*, 4 P.3d at 1088 (emphasis added). Thus, *Corsentino* does describe the objective test that courts must apply to decide the threshold issue of whether an operator was responding to an emergency.

¶ 42 But the court didn't extend that same test to the exceptions contained in section 42-4-108(2)(a) to (d). Instead, the supreme court instructed that in assessing the applicability of section 42-4-108(2)(c)'s exception allowing an emergency vehicle driver to speed so long as the driver does not endanger life or property, "courts should limit their inquiry to the relationship between the conduct of the emergency operator prior to the accident and the circumstances surrounding the conduct." *Id.* at 1093. The *Corsentino* court noted that "[i]mportant factors relating to the circumstances include, but are not limited to, the legal speed limit in the area, the speed at which the operator was driving, the conditions of the road, and the type of area in which [the operator] was driving." *Id.*

¶ 43 Similarly, a division of this court has recognized that the application of subsection (2)(b)'s red light exception entails examining the circumstances of the case. *See Bilderback,* ¶¶ 11-16. "[T]he phrase 'as may be necessary for safe operation' calls for the court to take into account how the [driver] proceeded through the intersection," not just how the driver entered the intersection. *Id.* at ¶ 15. The division further observed that what constitutes safe

25

operation within the meaning of section 42-4-108(2)(b) varies from case to case and includes consideration of the circumstances surrounding the intersection at issue. *Id.* at ¶ 16.

¶ 44     In light of these authorities, then, we conclude that a court should consider the conduct of the operator and the totality of the circumstances surrounding the accident in deciding whether an emergency vehicle operator's conduct qualifies for the exception contained in section 42-4-108(2)(b).

   D.     The District Court Didn't Err by Determining that the CGIA
          Barred Smith's Claims Against the Denver Defendants

¶ 45     Here, the district court examined the totality of the circumstances surrounding the accident and determined that the Denver Defendants were entitled to sovereign immunity under the relevant emergency vehicle exception to the immunity waiver. The court properly noted that "the existence of the [a]ccident [was] not enough on its own to demonstrate that the Denver Defendants acted contrary to [section 42-4-108(2)(b)]." Rather, the court observed that under *Corsentino*, its analysis must focus on the connection between the emergency operator's conduct and the circumstances surrounding that conduct. And the court further

noted that it should consider the factors that the *Corsentino* court identified.

¶ 46     Applying this framework, the district court concluded that Jenkinson complied with section 42-4-108(2)(b) and (3) at the time of the accident because "he did slow down before [he] proceeded through the red light as necessary for safe operation[]" of the fire truck.  In support of this conclusion, the court found that Jenkinson (1) used the fire truck's lights and sirens while responding to the emergency call; (2) slowed down before reaching the intersection; (3) cleared each lane of traffic on Broadway before proceeding through the intersection; (4) accelerated only after he determined that it was safe for him to pass through the intersection; and (5) operated the fire truck well under the speed limit, even after he accelerated through the intersection.  The record supports these findings.

¶ 47     First, it's undisputed that, as Jenkinson entered the intersection, he slowed down and utilized the fire truck's lights and sirens.  During the *Trinity* hearing, Jenkinson testified that another firefighter used the air horn as they approached the intersection.  Jenkinson engaged the fire truck's exhaust brake when he took his

27

foot off the accelerator and placed it over the brake pedal to reduce his reaction time. He also testified that the fire truck further decelerated because the area of Speer leading up to the intersection was sloped uphill. Similarly, Detective Christopher Cesarec testified that the data he gathered in conducting his accident reconstruction was consistent with the fire truck slowing down.

¶ 48 Next, Jenkinson testified that he had accounted for each lane of cross traffic before accelerating through the intersection. The record shows that none of the vehicles on southbound Broadway were moving, even though the traffic light had just turned green for them. Indeed, Jenkinson observed that one vehicle had "jumped . . . , meaning they actually started to proceed," but then stopped after "they saw the firetruck and heard the firetruck." While the lane through which the car containing Smith entered the intersection was open, Jenkinson said that he looked "all the way [up]" Broadway and didn't see any oncoming traffic. And according to Jenkinson, he stopped covering the brake pedal and began accelerating through the intersection only after he had cleared all lanes of the southbound traffic. The court found Jenkinson's testimony credible.

¶ 49    Finally, Detective Cesarec testified that the fire truck was traveling roughly twenty-seven miles per hour at the time of the collision.  Given that the parties stipulated the posted speed limit on Speer was thirty-five miles per hour, the record demonstrates that Jenkinson drove under the speed limit even after he started accelerating through the intersection.

¶ 50    In his briefing, Smith directs us to evidence presented at the *Trinity* hearing that he argues supports his position that Jenkinson failed to slow down as was necessary for the safe operation of the fire truck.  For example, Smith repeatedly points out that Jenkinson told the police after the accident that he thought he had a green light.  Relying on that statement, Smith goes on to argue that "a reasonable engineer would have known the light was red while approaching the intersection."  But during the hearing, Jenkinson explained his earlier statement regarding the color of the light and clarified that he no longer believed that the light was green when he entered the intersection.  At any rate, it was the district court's role as the fact finder to resolve this and any other conflicting evidence, determine the credibility of the witnesses, and decide what weight to give each piece of evidence.  *See Owners Ins.*

*Co. v. Dakota Station II Condo. Ass'n*, 2021 COA 114, ¶ 50. That is not our role as an appellate court. *Id.*

¶ 51 In sum, we conclude that the district court didn't err by determining that Smith's claims against the Denver Defendants must be dismissed for lack of subject matter jurisdiction under the CGIA because, at the time of the accident, Jenkinson operated the fire truck in compliance with section 42-4-108(2)(b) and (3) and, therefore, he was covered by immunity under section 24-10-106(1)(a).

IV.     Appellate Attorney Fees and Costs

¶ 52 Lastly, the Denver Defendants request an award of appellate "attorney[] fees and costs incurred in responding to the appeal pursuant to C.A.R. 28(b)." C.A.R. 28(b) sets forth the requirements of an appellee's answer brief, and the provision does provide that "[t]he answer brief must also contain any request for attorney fees." But a request for attorney fees on appeal "must include a specific request, under a separate heading, and must explain the legal and factual basis for an award of attorney fees." C.A.R. 39.1; *see also Cikraji v. Snowberger*, 2015 COA 66, ¶ 22 (stating that a party's request for appellate attorney fees must identify a legal basis under

which those fees are recoverable). The Denver Defendants' brief does not satisfy these requirements. Accordingly, we deny the Denver Defendants' request for appellate attorney fees.

¶ 53 But the Denver Defendants are entitled to their appellate costs under C.A.R. 39(a)(2), which provides, "[I]f a judgment is affirmed, costs are taxed against the appellant." The Denver Defendants may pursue those costs in the district court by following the procedure set forth in C.A.R. 39(c)(2).

## V. Disposition

¶ 54 The judgment is affirmed.

JUDGE J. JONES and JUDGE MOULTRIE concur.