25CA1297 Peo in Interest of SLA 04-23-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1297
Mesa County District Court No. 23JV56
Honorable Jeremy Chaffin, Judge

The People of the State of Colorado,

Appellee,

In the Interest of S.L.A., a Child,

and Concerning K.A. a/k/a K.M. and D.A.,

Appellants.

APPEAL DISMISSED IN PART AND JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE JOHNSON
Pawar and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 23, 2026

Todd M. Starr, County Attorney, John Rhoads, Assistant County Attorney, Grand Junction, Colorado, for Appellee

Josie Burt, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant K.A.

Blair K. Drazic, Loma, Colorado, for Appellant D.A.

¶ 1    D.A. (father) and K.A. a/k/a K.M. (mother) appeal the juvenile court's judgment terminating the parent-child legal relationship between them and S.L.A. (the child). We dismiss father's appeal, as we lack jurisdiction over it, and we affirm the judgment of termination against mother.

## I.    Background

¶ 2    In June 2023, the Mesa County Department of Human Services (the Department) was granted custody of the child after receiving information that the parents were engaging in drug use and criminal activity in the home. The Department filed a petition in dependency or neglect. Mother entered a no fault admission to the petition, and the child was adjudicated dependent and neglected as to mother. Father entered a denial, and the juvenile court held an adjudicatory trial from January 2-5, 2024. A jury returned a verdict finding the child dependent and neglected as to father on January 5.

¶ 3    The court entered a dispositional order on January 19, 2024 and adopted treatment plans for mother and father. Almost a year later, the Department filed a motion to terminate mother's and father's legal relationships with the child. After the court held a

termination hearing in May 2025, the juvenile court terminated mother's and father's parental rights in an order dated June 21, 2025.

¶ 4     Father and mother now appeal.

## II.     Father's Appeal

¶ 5     Father contends that he is appealing the judgment terminating his parental rights, but his arguments relate solely to evidentiary issues that occurred during the adjudicatory hearing. As a result, we dismiss his appeal for lack of jurisdiction.

### A.     Standard of Review

¶ 6     "Before reaching the merits of an appeal, we must first determine whether we have jurisdiction." *Smith v. City & County of Denver*, 2025 COA 70, ¶ 12 (quoting *Stone Grp. Holdings LLC v. Ellison*, 2024 COA 10, ¶ 15). As a result, we will raise the issue of jurisdiction nostra sponte if necessary. *Id.* at ¶ 12.

### B.     Analysis

¶ 7     Father is attempting to argue the merits of adjudicating the child dependent and neglected as to him by way of purportedly challenging the termination order. But all of father's evidentiary challenges — such as arguments that the witnesses who testified on

behalf of the Department should not be considered experts or that they testified to inadmissible hearsay — relate to his attempt to limit the witnesses who testified at the adjudicatory hearing based on the motion in limine he filed before that hearing or his objections to witness testimony at the trial.

¶ 8     Therefore, we are unpersuaded that his appeal is timely because, contrary to his position, the disposition date is not the date of the termination hearing. *See People in Interest of C.L.S.*, 934 P.2d 851, 854 (Colo. App. 1996) ("[F]ollowing an adjudication of dependency and neglect, the initial dispositional order adopting a treatment plan constitutes a 'decree of disposition' and renders the adjudication and the initial dispositional order final for purposes of appeal."). Following the jury verdict, the court entered a dispositional order concerning father on January 19, 2024. Section 19-1-109(2)(c), C.R.S. 2025, states that "[a]n order decreeing a child to be neglected or dependent shall be a final and appealable order after the entry of the disposition." *See also People in Interest of C.B.*, 2019 COA 168, ¶ 18 (holding that a challenge to an adjudication of dependency and neglect must be raised in an appeal "from the adjudicatory stage of a dependency and neglect

proceeding" and that a "judgment of adjudication becomes final and appealable on entry of the initial dispositional order"). Under C.A.R. 3.4(b)(1), an individual must appeal an order in dependency and neglect proceedings within twenty-one days of the entry of the order. Therefore, the deadline for father to appeal the adjudication was February 9, 2024.

¶ 9    And while father raises allegations that he did not receive a fair trial because the lawyers who litigate such cases in his jurisdiction comprise a "pretty small bar," such allegations — to the extent there is any merit to them — needed to be raised in a timely appeal to this court following the dispositional order. Because he did not do so, father's appeal is dismissed for lack of jurisdiction.

### III.    Mother's Appeal

¶ 10    Mother contends the juvenile court erred by finding that the Department had provided reasonable efforts to reunify her and the child. She also asserts that the Department did not consider her specific medical needs when implementing the treatment plan and did not provide her reasonable accommodations under the Americans with Disabilities Act (ADA) to address her disability.

A.    Standard of Review and Applicable Law

¶ 11    Whether a juvenile court errs in terminating parental rights is a mixed question of fact and law, which we review by analyzing the court's "application of the termination statute to evidentiary facts." *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 10. The court's findings will not be disturbed if they are supported by facts in the record. *See People in Interest of L.M.*, 2018 COA 57M, ¶ 17. And witness credibility and the weight of the evidence are within the district court's discretion. *Id.* But we review de novo whether the proper legal standard was applied to the facts of the case. *See People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.

¶ 12    Pursuant to section 19-3-604(1)(c), C.R.S. 2025, parental rights may be terminated if the juvenile court finds "by clear and convincing evidence" that (1) the child "is adjudicated dependent or neglected"; (2) the parent has not complied with the court-approved treatment plan or the plan "has not been successful"; (3) "the parent is unfit"; and (4) the parent's conduct or condition "is unlikely to change within a reasonable time."

## B.    Reasonable Efforts

¶ 13    We disagree with mother's assertion that the Department did not provide reasonable efforts to reunify her and the child because it failed to consider her specific medical needs when implementing the treatment plan.

¶ 14    The treatment plan is meant to "preserve the parent-child legal relationship by assisting the parent in overcoming the problems that required intervention into the family." *People in Interest of S.K.*, 2019 COA 36, ¶ 14.  An appropriate treatment plan is one "that is reasonably calculated to render the particular respondent fit to provide adequate parenting to the child within a reasonable time and that relates to the child's needs." § 19-1-103(12), C.R.S. 2025. In analyzing parental fitness and whether a parent's conduct or condition is likely to change, the district court must consider whether reasonable efforts have been made to rehabilitate the parent.  *S.K.*, ¶ 15.

¶ 15    Reasonable efforts "means the exercise of diligence and care" for a child in out-of-home placement or foster care. § 19-1-103(114).  Before terminating parental rights, reasonable efforts must be made to reunify the family.  § 19-3-100.5(1), C.R.S.

2025; § 19-3-604(2)(h). The reasonable efforts standard is satisfied if services are provided in accordance with section 19-3-208, C.R.S. 2025. Section 19-3-208 provides that the Department must offer, among other things, screening, assessments, counseling, family time services, and information on available public and private resources. § 19-3-208(2)(b). And if funding is available, the Department must offer, among other things, health-care services including diagnostic and mental health services, drug and alcohol treatment, and family counseling. § 19-3-208(2)(d).

¶ 16    The juvenile court held that the Department exercised reasonable efforts to reunify mother and the child. Specifically, the court found that the Department made the following efforts on behalf of mother:

> [It] attempted to limit stressors . . . set up special meetings and appointments, and . . . assisted with housing, additional caseworker support, and other items[,] . . . initiated efforts to ensure that [mother] was appointed a guardian ad litem[,] . . . got adult protective services involved[,] . . . connected with [mother]'s care coordinator . . . and ensured that [mother] was able to work with that person[,] . . . [and] worked closely with [mother's] care coordinator.

The juvenile court also found that mother "did not meaningfully comply with the treatment plan in any way" and that she "continually just doesn't show up. She doesn't attend meetings, doesn't attend treatment, and doesn't even go to see [the child]."

¶ 17 The record supports the juvenile court's findings. The caseworker testified that the Department provided mother with multiple phones, transportation, and life skills coaching. It also assisted with scheduling her doctor's appointments and family time with the child. And the Department authorized domestic violence assessments and mental health and substance abuse evaluations, as well as tried to assist mother with obtaining sober living. The caseworker further testified that mother stopped showing up for family time and progressively stopped communicating with the Department.

¶ 18 What is more, early on in this case, the juvenile court and the parties addressed whether a medical component or additional services were necessary for mother's treatment plan. At a hearing in February 2024, the Department's counsel inquired about whether a medical component should be added to mother's treatment plan. The caseworker agreed it "would be a good"

addition, but without more information from mother as to her needs, the Department could not determine what medical services would be helpful because it was unsure of mother's diagnosis. The juvenile court delved deeper, asking mother whether she was requesting "in-home services," such as "a nurse or caretaker." Mother responded that "it's very difficult to say because it's almost like just rides and stuff, or because I don't have a vehicle."

¶ 19 Ultimately, the court determined that the Department was unable to meaningfully add a medical component to mother's treatment plan at that time without more information and, if needed, the parties would revisit the issue if mother obtained more information and presented it to the court. The juvenile court encouraged mother to comply with her doctor's recommendations to determine what medical concerns needed to be addressed so the Department could add identified services to the treatment plan. Mother has not pointed us to, nor can we find, any instance in the record where mother followed up with the court with detailed medical information to revisit this issue.

¶ 20 As a result, we conclude that the juvenile court did not err by finding that the Department exercised reasonable efforts to reunify

mother and the child and that the court did not abuse its discretion by declining to implement a medical component to mother's treatment plan, as mother did not provide the detailed information necessary to specify what services may have been appropriate.

## C.    ADA Accommodations

¶ 21    Mother contends that the Department did not provide accommodations under the ADA to address her disability. The Department asserts that this argument is not preserved. Mother concedes that she did not raise the issue of ADA accommodations before the juvenile court but argues that her disabilities were known by the Department from the outset. We agree that this issue is not preserved.

¶ 22    The Department has an affirmative duty to provide reasonable accommodations for a parent with a qualifying disability under the ADA. *S.Z.S.*, ¶ 14; *see also* 42 U.S.C. § 12102(1)(A) (defining "disability" under the ADA as "a physical or mental impairment that substantially limits one or more major life activities"); 42 U.S.C. § 12131(2) (defining "qualified individual" under the ADA). But this is only so if the Department knows of the qualified disability and if the parent raises "the issue of the ADA's applicability in a timely

manner." *S.Z.S.*, ¶ 16. It is preferred that a parent request reasonable accommodations if she knows she has a qualifying disability before a treatment plan is adopted. *Id.* This is because it is problematic to wait until the termination hearing to raise the ADA issue, as a Department cannot be required to accommodate a disability if it does not have knowledge of its existence. *Id.* at ¶ 17.

¶ 23 We conclude that the Department was not on notice that mother asserted she was a qualified individual with a disability under the ADA.

¶ 24 To begin with, mother's reliance on *S.K.* is misplaced. In that case, while a division of this court concluded that the parents' mental impairments were qualifying disabilities under the ADA, it did so where the parents underwent psychological evaluations that demonstrated they had certain mental disorders. *S.K.*, ¶¶ 23-24.

¶ 25 Here, mother did not provide any evidence to substantiate that she had an injury that qualified as a disability under the ADA, nor did she make a timely request for reasonable accommodations under the ADA. We acknowledge that mother likely has some health issues. And it appears that the Department was aware that mother had a medical condition and recognized that her treatment

11

plan should address that condition. But, as discussed above, mother never completed the assessments required or provided the Department with additional medical information, so there is nothing in the record to suggest — much less substantiate — that mother's medical condition was of a nature that qualified as a disability under the ADA.

¶ 26 This is not to say that the Department is relieved of any duty to provide reasonable accommodations when there may be uncertainty about a parent's diagnosis that identifies a particular disability. *See id.* at ¶ 22 ("[B]efore a public entity can be required under the ADA to provide reasonable accommodations, the entity must know that the individual is disabled, either because that disability is obvious or more likely because that individual, or someone else, has informed the entity of the disability."). While there is evidence to support that mother had some medical conditions, her alleged disability was not obvious, as the juvenile court was still unsure of mother's diagnosis at the termination hearing, noting that mother may have Wernicke-Korsakoff Syndrome, dementia, or some kind of traumatic brain injury. This uncertainty is exacerbated by the fact that the caseworker had

12

concerns about mother's continued drug use. The caseworker testified that mother "never took UAs during the case." Because of the caseworker's concerns, it is unlikely that mother's alleged disability was obvious to Department staff because a person who is currently engaging in illegal drug use does not qualify as an individual with a disability under the ADA. *See* 42 U.S.C. § 12210(a); 28 C.F.R. §§ 35.131(a)(1), 36.209(a)(1) (2025).

¶ 27 More importantly, though, mother does not point to anywhere in the record where she raised a request for reasonable accommodations, nor does she identify any modifications she believes would have accommodated her disability based on the various medical conditions that are at least reflected in the record, and we can find none. Therefore, because we view this issue as unpreserved, we decline to address it further *S.Z.S.*, ¶ 21.

### IV. Guardian Ad Litem's Request for Sanctions

¶ 28 The guardian ad litem (GAL) requests sanctions be imposed against father based on father's failure to comply with the appellate rules and because father made frivolous and vexatious arguments. The GAL requests that father's brief be struck and his appeal dismissed. Because we have dismissed father's appeal, the GAL's

13

requested relief is moot. *See Clark v. Farmers Ins. Exch.*, 117 P.3d

26, 32 (Colo. App. 2004) (dismissing a request for stay of

proceedings as moot where dismissal of the appeal satisfied the

request).

## V.    Conclusion

¶ 29     The appeal is dismissed as to father. The judgment is affirmed

as to mother.

JUDGE PAWAR and JUDGE GOMEZ concur.